

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEANNETTE D. PFLAUMER TRUST DATED    :
OCTOBER 20, 1983, and WILLIAM H.     :
PFLAUMER TRUST DATED DECEMBER 31,  :
1981,                                     :

          Plaintiffs,            :

                             :    CASE NO. **11    5030**

        v.                 :

LINCOLN NATIONAL LIFE INSURANCE    :
COMPANY,                          :

        Defendant.

## NOTICE OF REMOVAL

Defendant Lincoln National Life Insurance Company ("LNL"), by and through

undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, removes this

action to the United States District Court for the Eastern District of Pennsylvania, and in

support thereof states:

1.   This action is removed to the United States District Court for the Eastern District

of Pennsylvania on the basis that this Court has original jurisdiction of this action

pursuant to 28 U.S.C. § 1332, based upon complete diversity of citizenship of the parties

and satisfaction of the requisite jurisdictional amount in controversy.

2.   This action was originally filed in the Court of Common Pleas of Philadelphia

County, Pennsylvania, and was styled <u>Jeannette D. Pflaumer Trust Dated October 20,</u>

<u>1983 and William H. Pflaumer Trust Dated December 31, 1981 v. Lincoln National Life</u>

<u>Insurance Company</u>, Case No. 3223, June Term 2011 (the "State Court Action").

3.   The State Court Action was filed in Philadelphia County, Pennsylvania and the Complaint in the State Court Action alleges that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. (Complaint, ¶¶ 34-36.)  Accordingly, venue is proper in this Court.  28 U.S.C. §§ 1391(a), 1441(a).

4.   Plaintiffs filed their initial complaint in the State Court Action on July 1, 2011 (the "Complaint").  Defendant LNL received a copy of the Complaint when it was served (at the earliest) on July 5, 2011.  Thus, LNL has timely filed this Notice of Removal, pursuant to 28 U.S.C. § 1446(b), within thirty (30) days of its first receipt of the Complaint.

5.   At the time that Plaintiffs filed the Complaint in the State Court Action, and at the time of filing this Notice of Removal, complete diversity of citizenship existed between Plaintiffs and the Defendant to this action, pursuant to 28 U.S.C. § 1332.

6.   Both at the time the Complaint was filed, and at the time of removal, Plaintiffs were and are citizens of the Commonwealth of Pennsylvania.  Plaintiffs are two Trusts controlled by a single trustee, Jeannette Pflaumer Tierney, a citizen of the Commonwealth of Pennsylvania. (Compl., ¶¶ 1-3.)  Plaintiffs are therefore citizens of the Commonwealth of Pennsylvania, pursuant to 28 U.S.C. § 1332.

7.   Both at the time the Complaint was filed, and at the time of removal, Defendant LNL was and is a citizen of Indiana.  LNL is an Indiana corporation with its principal place of business in Indiana. (Compl., ¶ 4.)  Defendant is therefore a citizen of Indiana, pursuant to 28 U.S.C. § 1332.

8.   Plaintiffs allege in the Complaint in the State Court Action that LNL has not fulfilled its contractual duties under two life insurance policies (policy no. 0005395435 and policy no. 0005621125), by failing to deliver the $250,000 in proceeds of said policies to Plaintiffs.  (Compl., ¶¶ 52, 86.)  Therefore, the amount in controversy in this action, pursuant to 28 U.S.C. § 1332(a), both at the time the Complaint was filed and at the time of removal, exceeds $75,000, exclusive of interest and costs.

9.   True and legible copies of all process, pleadings, orders, and other papers or exhibits of every kind on file in the State Court Action as of the date of filing of this notice are attached hereto as Exhibit A, as required by 28 U.S.C. § 1446(a).

10. Concurrent with the filing of this Notice of Removal, written notice of the filing of this Notice of Removal was timely served on Plaintiffs' counsel by first-class mail, and a copy of this Notice of Removal was filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, in compliance with 28 U.S.C. § 1446(d).

11. Accompanying this Notice of Removal is a Civil Cover Sheet and a check in the amount of $350.00 for the required filing fee.

Dated: August 4, 2011

Joel E. Tasca (PA Bar No. 81363)
Ruth S. Uselton (PA Bar No. 208089)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
Telephone:  215.665.8500
Facsimile:  215.864.8999
tasca@ballardspahr.com
useltonr@ballardspahr.com

*Attorneys for Defendant Lincoln National*
*Life Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 4th day of August, 2011, a

true and correct copy of the foregoing was served via first-class mail to:

Craig F. Turet, Esquire
Offit Kurman
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorney for Plaintiffs*

Ruth S. Uselton (PA Bar No. 208089)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
Telephone:  215.665.8500
Facsimile:  215.864.8999
useltonr@ballardspahr.com

*Attorney for Defendant Lincoln National
Life Insurance Company*



Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2011**

E-Filing Number: 1107000270

**003223**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JEANNETTE D. PFLAUMER TRUST DATED OCTOBER 20, 1983 | LINCOLN NATIONAL LIFE INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5357 DELMAR ROAD CLIFTON HEIGHTS PA 19018 | 1300 SOUTH CLINTON STREET FORT WAYNE IN 46802 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| WILLIAM H. PFLAUMER TRUST DATED DECEMBER 31, 1981 | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5357 DELMAR ROAD CLIFTON HEIGHTS PA 19018 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal   [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration [ ] Jury [X] Non-Jury [ ] Other: | [ ] Mass Tort [ ] Savings Action [ ] Petition | [ ] Commerce [ ] Minor Court Appeal [ ] Statutory Appeals | [ ] Settlement [ ] Minors [ ] W/D/Survival |

**CASE TYPE AND CODE**

10 - CONTRACTS OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED PRO PROTHY** JUL 01 2011 **S. GARRETT** | YES          NO |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:  JEANNETTE D. PFLAUMER TRUST DATED OCTOBER 20, 1983 , WILLIAM H. PFLi
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| CRAIG F. TURET | OFFIT KURMAN TEN PENN CENTER - SUITE 2300 1801 MARKET STREET PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (267)338-1307 | (267)338-1335 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 53662 | cturet@offitkurman.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| CRAIG TURET | Friday, July 01, 2011, 10:02 am |

FINAL COPY (Approved by the Prothonotary Clerk)

OFFIT KURMAN
By:  Craig F. Turet, Esquire
      Attorney I.D. No. 53662
1801 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
(267)338-1307
cturet@offitkurman.com

Attorneys for Plaintiffs,
the Jeannette D. Pflaumer Trust
Dated October 20, 1983 and
the William H. Pflaumer Trust
December 31, 1981

JEANNETTE D. PFLAUMER TRUST
DATED OCTOBER 20, 1983
5357 Delmar Road
Clifton Heights, PA 19018

and

WILLIAM H. PFLAUMER TRUST
DATED DECEMBER 31, 1981
5357 Delmar Road
Clifton Heights, PA 19018
                                    Plaintiffs

v.

LINCOLN NATIONAL LIFE INSURANCE
COMPANY
1300 South Clinton Street
Ft. Wayne, IN 46802
                                    Defendant

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PA

THIS IS NOT AN ARBITRATION
MATTER

JUNE TERM, 2011

NO. 3223

| NOTICE TO PLEAD | |
|---|---|
| NOTICE | ADVISO |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you. You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregra a la corte en forma escrita sus defenses o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perer dinero o sus propiedades uotros derechos importantes para used. Lleva esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |
| Philadelphia County Bar Association Lawyer Referral and Information Service One Reading Center Philadelphia, PA 19107 | |

| (215) 238-6333<br>TTY (215) 451-6197 | Asociacion de Licenciados de Filadelfia<br>Servicio de Referencia e Informacion Legal<br>One Reading Center<br>Philadelphia, PA 19107<br>(215) 238-6333<br>(215) 451-6197 |
|---|---|

## COMPLAINT

Plaintiffs, the Jeannette D. Pflaumer Trust Dated October 20, 1983 and the William H. Pflaumer Trust Dated December 31, 1981, by and through its attorneys, Offit Kurman, for their Complaint against Defendant Lincoln National Life Insurance Company, allege as follows:

## THE PARTIES

1.     Plaintiff, the Jeannette D. Pflaumer Trust Dated October 20, 1983 (the "Jeannette Trust"), is a Trust created under and through an Irrevocable Deed of Trust Dated October 20, 1983 (the "Jeannette Trust Instrument"), and with a situs in the Commonwealth of Pennsylvania. A true and correct copy of the Jeannette Trust Instrument is attached as Exhibit "A".

2.     Plaintiff, the William H. Pflaumer Trust Dated December 31, 1981 (the "William Trust"), is a Trust created under and through an Indenture of Trust Dated April 15, 1976 and a First Amendment to Indenture of Trust Dated December 31, 1981, with a situs in the Commonwealth of Pennsylvania.   A true and correct copy of the William Trust Instrument and First Amendment is attached as Exhibit "B".

3.     The sole Trustee of the Jeannette Trust and of the William Trust currently is Jeannette Pflaumer Tierney who resides at 5357 Delmar Road, Clifton Heights, PA 19018.

4.     Defendant, Lincoln National Life Insurance Company, is a corporation with a principal place of business located at 1300 South Clinton Street, Ft. Wayne, IN 46802.

## FACTUAL BACKGROUND

5.     Jeannette Pflaumer Tierney, trustee, is the daughter of William H. Pflaumer ("William Pflaumer") and Jeannette D. Pflaumer.

6.     William Pflaumer, a quasi-public figure who was commonly known as the "Philadelphia Beer Baron", had achieved apparent fortune and fame by acquiring a Philadelphia institution, the Schmidt's brewery.

7.     Pflaumer also was continually under investigation for illegal and fraudulent activity.

8.     After more than a decade of criminal investigations into his practices and alleged ties to organized crime, William Pflaumer was convicted in 1983 of a false billing scheme in which he had willfully evaded over $125,000 in excise taxes.

9.     Pflaumer ultimately was imprisoned and later was forced to sell what remained of the Schmidt's brewery.

10.     In addition to his shady criminal history, Pflaumer was equally renowned as an uncontrollable spendthrift.  The incalculable millions of dollars he reaped from the Schmidt's brewery funded a lavish lifestyle and financed the construction of an enormous mansion in New Jersey with an entertainment pavilion, horse barn, man-made lake and 18-hole golf course, among other amenities.

11.     However, despite the flashy lifestyle, Pflaumer spent more money than he possessed, and over time he grew deeper and deeper in debt, borrowing money from friends and acquaintances until he was forced to sell what remained of the Schmidt's brewery.  His New Jersey mansion was lost through bankruptcy.

12.     Pflaumer's spectacular downfall culminated, after his release from prison, in a life of poverty, subsisting on handouts and loans from family and friends, many of which were never

repaid.

### The Jeannette Trust, created in 1983, served to shield assets from the reach of William Pflaumer, a shady character and legendary spendthrift

13.   Amidst William Pflaumer's legal troubles, in or about October of 1983, the Pflaumer family created the Jeannette Trust, named for the Pflaumer matriarch and wife of William Pflaumer.

14.   The Jeannette Trust was specifically created as a spendthrift trust, with a set of independent Trustees appointed to include an accountant (Harvey W. Grossman), an attorney (Philip M. Shiekman), a family friend (William T. Elliott) and one of the Pflaumer children (Robert L. Pflaumer), among others, to facilitate judicious and balanced decisionmaking.

15.   William Pflaumer was purposefully not appointed as a Trustee of the Jeannette Trust, since he had already shown himself to be incapable and untrustworthy in his handling of money.

16.   At no time between October 20, 1983, when the Jeannette Trust was created, and May 22, 2010, when William Pflaumer died, was William Pflaumer ever authorized to serve as a Trustee of the Jeannette Trust, or otherwise given decisionmaking authority over that Trust.

### The William Trust, created in 1976, served to protect assets for the benefit of the children of William Pflaumer and Jeannette D. Pflaumer; and that trust was amended in 1981 to remove all powers and authorities previously vested in William Pflaumer, and to assign those powers to the children

17.   The William Trust, when originally created in 1976, served as a vehicle through which to grow and protect assets for the benefit of the six Pflaumer children.

18.   Although William Pflaumer originally was given the power to appoint a substitute trustee (other than himself) in the event of a vacancy, from at least the early-1980s on, William Pflaumer had no further powers of appointment or other powers or authorities under the William

Trust.

19.    From the early-1980s until the time of his death on May 22, 2010, William Pflaumer was never authorized to serve as a Trustee of the William Trust, nor was he ever given decisionmaking authority over that Trust.

### *The death of Billy Pflaumer, Jr. generated $250,000 in life insurance proceeds*

20.    In 1989, two Universal Life Insurance policies were applied for and obtained on the life of William Pflaumer's son, William H. Pflaumer, Jr. ("Billy Jr.").

21.    The first of those two life insurance policies (policy no. 0005395435) was obtained on or about January 7, 1989 from the Alexander Hamilton Life Insurance Company, with a benefit of $100,000.

22.    The owner and beneficiary of policy no. 0005395435 was the William Trust.

23.    The second of those two life insurance policies (policy no. 0005621125) was obtained on or about September 19, 1989 from the Alexander Hamilton Life Insurance Company, with a benefit of $150,000.

24.    The owner and beneficiary of policy no. 00055621125 was the Jeannette Trust.

25.    At some point in time after the year 2000, Lincoln National Life Insurance Company ("LNL") acquired certain assets and liabilities of the Alexander Hamilton Life Insurance Company from Jefferson Pilot, specifically including the assets and liabilities associated with policy nos. 0005395435 and 0005621125.

26.    Billy Jr. died on or about October 3, 2006 at the age of 51.

### *On July 3, 2007, LNL issued two checks totaling $250,000 in life insurance proceeds on the life of Billy Pflaumer, Jr., one of which was made payable to the correct beneficiary, the Jeannette Trust, and the other of which was mistakenly issued by LNL as payable to the Jeannette Trust when the proper beneficiary was the William Trust.*

27.    On July 3, 2007, LNL issued two separate insurance proceeds checks (the

"Insurance Proceeds Checks") to the Jeannette Trust, c/o William T. Elliott ("Elliott"), who was a trustee of the Jeannette Trust at the time.

28.    The first check, representing payment of life insurance proceeds on policy no. 0005395435, was in the amount of $100,000.   A true and correct copy of this check is attached as Exhibit "C".

29.    The first check, representing payment of life insurance proceeds on policy no. 0005395435, should have been made payable to the William Trust, the proper beneficiary under that policy.

30.    LNL mistakenly issued the insurance proceeds check on policy no. 0005395435 as payable to the Jeannette Trust, c/o Elliott.

31.    Elliott was not a trustee of the William Trust in July of 2007, or ever.

32.    The second check, representing payment of life insurance proceeds on policy no. 0005621125, was in the amount of $150,000.  A true and correct copy of this check is attached as Exhibit "D".

33.    The second check, representing payment of life insurance proceeds on policy no. 005621125, was made payable to the appropriate beneficiary, the Jeannette Trust, c/o Elliott.

### *LNL delivered the two Insurance Proceeds Checks to a local LNL agent in Philadelphia, who tendered the two checks to a courier for William Pflaumer, even though neither the courier nor William Pflaumer were trustees of the Jeannette Trust or the William Trust*

34.    Instead of delivering the two Insurance Proceeds Checks to William Elliott, the trustee of the Jeannette Trust, LNL delivered those checks to a local LNL agent, Stephen Ebbecke, at some point in time between July 6, 2007 and July 10, 2007.

35.    Also between July 6, 2007 and July 10, 2007, Stephen Ebbecke delivered the two Insurance Proceeds Checks to a courier, who was affiliated at the time with William Pflaumer.

36.     On or before July 10, 2007, the courier delivered the Insurance Proceeds Checks to William Pflaumer himself.

> *Using a checking account that he had opened in the name of the Jeannette Trust without authorization and without the knowledge of the Jeannette Trust, William Pflaumer went on an unbridled spending spree, dissipating substantially all of the $250,000 in life insurance proceeds within two days*

37.     On July 10, 2007, William Pflaumer took the two Insurance Proceeds Checks from LNL totaling $250,000, both made payable to the Jeannette Trust, and deposited them into an account which he had set up without authorization in the name of the Jeannette Trust.

38.     Almost immediately upon depositing the $250,000 in life insurance proceeds that did not belong to him, William Pflaumer went on an unabashed spending spree with the money.

39.     Within two days of making the deposit, William Pflaumer transferred $80,000 of the proceeds to a beverage business with which he was affiliated (from which the money was squandered) and wrote nine checks totaling over $164,000, some of which checks were made payable to "cash".

40.     Within approximately two weeks, only $53.50 remained in the Jeannette Trust Account, and the entire $250,000 in life insurance proceeds had been dissipated.

41.     Because LNL and its agent chose to tender the two Insurance Proceeds Checks to William Pflaumer and his courier, and because Pflaumer dissipated all of the $250,000 in insurance proceeds, the $250,000 in life insurance proceeds never reached the William Trust or the Jeannette Trust.

42.     Only after William Pflaumer died on May 22, 2010 was an investigation commenced into insurance and financial issues surrounding William Pflaumer, and only much later in 2011 did the Jeannette Trust learn the disturbing truth about what had transpired.

## COUNT I:  BREACH OF CONTRACT (Policy No. 0005395435)

### (William Trust v. LNL)

43.    Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 42, inclusive, as if fully set forth herein.

44.    In or about January of 1989, Alexander Hamilton Life Insurance Company was paid a single premium for Universal Life policy no. 0005395435, which provided $100,000 in insurance benefit on the life of Billy Jr.

45.    As a Universal Life policy, the single premium paid at the outset accrued interest over time, and also continued to pay premiums to maintain the insurance coverage over a period of years.

46.    On information and belief LNL acquired the assets and liabilities associated with policy no. 0005395435 as part of a larger acquisition of assets and liabilities from Jefferson Pilot at some point in time after the year 2000.

47.    Policy no. 0005395435 was still in effect as of October 3, 2007, when Billy Jr. died.

48.    LNL acknowledged that it was obligated to pay the life insurance benefit to the beneficiary on policy no. 0005395435 when it issued a check in the amount of $100,000 on July 3, 2007.

49.    The beneficiary on policy no. 0005395435 was the William Trust.

50.    Both the Jeannette Trust and the William Trust agree that the proper beneficiary under policy no. 0005395435 was at all times and remains today the William Trust.

51.    LNL made the $100,000 life insurance proceeds check on policy no. 0005395435 payable to the Jeannette Trust instead of to the appropriate beneficiary, the William Trust.

52.    The William Trust has never received all or any portion of the $100,000 life insurance proceeds on policy no. 0005395435.

53.    The William Trust has requested payment of the $100,000 in life insurance

Case ID: 110603223

proceeds under policy no. 0005395435, but LNL has refused to pay same.

WHEREFORE, for all the foregoing reasons, the William Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $100,000 plus interest, attorneys' fees and such other and further relief as the Court may deem appropriate.

## COUNT II: BREACH OF CONTRACT (Policy No. 0005395435)

### (William Trust v. LNL)

54.    Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.    Under Policy No. 0005395435, LNL was obligated to pay and to deliver the life insurance proceeds to the designated beneficiary upon the death of the named insured, William H. Pflaumer, Jr.

56.    On or about July 3, 2007, LNL issued a check in the amount of $100,000 on policy no. 0005395435, but it failed to deliver those funds to the designated beneficiary on policy no. 0005395435, the William Trust.

57.    LNL delivered the life insurance proceeds check in the amount of $100,000 on policy no. 0005395435 to local LNL agent, Stephen Ebbecke.

58.    Instead of delivering the checks to the trustee of the William Trust, Stephen Ebbecke handed those checks to a courier sent by William Pflaumer.

59.    Neither William Pflaumer nor the courier he sent to retrieve the insurance proceeds check on Policy no. 0005395435 was a Trustee of the William Trust in July of 2007.

60.    Once he received the insurance proceeds check in the amount of $100,000 on policy No. 0005395435, William Pflaumer managed to deposit it and dissipate the entire $100,000 within approximately 2 days.

61.    Thus, the $100,000 in life insurance proceeds on policy no. 0005395435 was never

Case ID: 110603223

issued and delivered by LNL to the proper beneficiary, the William Trust.

62.    Both the Jeannette Trust and the William Trust agree that the proper beneficiary under policy no. 0005395435 was at all times and remains today the William Trust.

63.    The William Trust has never received all or any portion of the $100,000 life insurance proceeds on policy no. 0005395435.

64.    The William Trust has requested payment of the $100,000 in life insurance proceeds under policy no. 0005395435, but LNL has refused to pay same.

65.    LNL has not fulfilled its contractual obligations to the beneficiary under policy no. 0005395435 to date, and thus LNL remains obligated to pay the $100,000 benefit amount on policy no. 0005395435 to the William Trust.

WHEREFORE, for all the foregoing reasons, the William Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $100,000 plus interest, attorneys' fees and such other and further relief as the Court may deem appropriate.

## COUNT III: BREACH OF CONTRACT (Policy No. 0005395435)

### *(ALTERNATIVE PLEADING)*

### (Jeannette Trust v. LNL)

66.    Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 65, inclusive, as if fully set forth herein.

67.    LNL was obligated to pay and to deliver the life insurance proceeds to the designated beneficiary under policy no. 00005395435, the William Trust, upon the death of the named insured, Billy Jr.

68.    On or about July 3, 2007, LNL issued a check in the amount of $100,000, mistakenly made payable to the Jeannette Trust, c/o William Elliott as trustee, pursuant to policy

no. 5395435.

69.     The Jeannette Trust never received all or any portion of the $100,000 in life insurance proceeds under policy no. 5395435.

70.     Both the Jeannette Trust and the William Trust agree that the proper beneficiary under policy no. 0005395435 was at all times and remains today the William Trust, not the Jeannette Trust.

71.     However, in this litigation, LNL may take the position that the Jeannette Trust should be deemed to have been the proper beneficiary under policy no. 0005395435.

72.     In the event that LNL takes the position in this litigation that the Jeannette Trust was the proper beneficiary under policy no. 0005395435, and that position is accepted by the trier of fact in this case, then as an alternative pleading the William Trust and the Jeannette Trust will agree that only the Jeannette Trust and not the William Trust may be deemed to be the beneficiary under policy no. 0005395435.

73.     In the event the Jeannette Trust is deemed to be the beneficiary under policy no. 0005395435, then LNL has not fulfilled its contractual obligations to the Jeannette Trust under policy no. 0005395435 to date, and thus LNL remains obligated to pay the $100,000 benefit amount on policy no. 0005395435 to the Jeannette Trust.

WHEREFORE, for all the foregoing reasons, the Jeannette Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $100,000 plus interest, attorneys' fees and such other and further relief as the Court may deem appropriate.

### COUNT IV:  BREACH OF CONTRACT (Policy No. 0005621125)

#### (Jeannette Trust v. LNL)

74.     Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 73, inclusive, as if fully set forth herein.

75.    In or about September of 1989, Alexander Hamilton Life Insurance Company was paid a single premium for Universal Life policy no. 0005621125, which provided $150,000 in insurance benefit on the life of Billy Jr.

76.    On information and belief LNL acquired the assets and liabilities associated with policy no. 0005621125 as part of a larger acquisition of assets and liabilities from Jefferson Pilot at some point in time after the year 2000.

77.    Policy no. 0005621125 was still in effect as of October 3, 2007, when Billy Jr. died.

78.    LNL acknowledged that it was obligated to pay the life insurance benefit to the beneficiary on policy no. 0005621125 when it issued a check in the amount of $150,000 on July 3, 2007.

79.    Under policy no. 0005621125, LNL was obligated to pay and to deliver the life insurance proceeds to the designated beneficiary upon the death of the named insured, Billy Jr.

80.    On or about July 3, 2007, LNL issued a check in the amount of $150,000 on policy no. 0005621125, but it failed to deliver those funds to the designated beneficiary on policy no. 0005621125, the Jeannette Trust.

81.    LNL delivered the life insurance proceeds check in the amount of $150,000 on policy no. 0005621125 to local LNL agent, Stephen Ebbecke.

82.    Instead of delivering the checks to the trustee of the Jeannette Trust, Stephen Ebbecke handed those checks to a courier sent by William Pflaumer.

83.    Neither William Pflaumer nor the courier he sent to retrieve the insurance proceeds check on policy no. 0005621125 was a Trustee of the Jeannette Trust in July of 2007.

84.    Once he received the insurance proceeds check in the amount of $150,000 on policy No. 0005621125, William Pflaumer managed to deposit it and dissipated the entire $150,000 within approximately 2 days.

85.    Thus, the $150,000 in life insurance proceeds on policy No. 0005621125 was never issued and delivered by LNL to the proper beneficiary, the Jeannette Trust.

Case ID: 110603223

86.    The Jeannette Trust has never received all or any portion of the $150,000 life insurance proceeds on policy no. 0005621125.

87.    The Jeannette Trust has requested payment of the $150,000 in life insurance proceeds under policy no. 0005621125, but LNL has refused to pay same.

88.    LNL has not fulfilled its contractual obligations to the beneficiary under policy no. 0005621125 to date, and thus LNL remains obligated to pay the $150,000 benefit amount on policy no. 0005621125 to the Jeannette Trust.

WHEREFORE, for all the foregoing reasons, the Jeannette Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $150,000 plus interest, attorneys' fees and such other and further relief as the Court may deem appropriate.

## COUNT V: BAD FAITH (42 Pa.C.S.A. §8371)

### (William Trust v. LNL)

89.    Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.    By June 24, 2011 at latest, Plaintiff provided LNL with all the facts and documentation necessary for LNL to confirm that payment had been made to the wrong beneficiary on policy no. 0005395435.

91.    By June 24, 2011 at latest, Plaintiff provided LNL with all the facts and documentation necessary for LNL to confirm that payment had never been delivered to the proper beneficiary on policy no. 0005395435, the William Trust.

92.    Plaintiff demanded from LNL on June 27, 2011 that LNL pay the $100,000 life insurance benefit on policy no. 0005395435 to the appropriate beneficiary, the William Trust.

93.    Despite repeated demand, in writing and by telephone, LNL has refused to pay the $100,000 life insurance benefit to the William Trust.

Case ID: 110603223

94.   LNL's refusal to pay the amount owed on policy no. 0005395435 constitutes bad faith pursuant to 42 Pa.C.S.A. § 8371.

WHEREFORE, for all the foregoing reasons, the William Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $100,000, plus interest at a rate of prime rate plus 3%, plus punitive damages, plus attorneys' fees, and such other and further relief as the Court may deem appropriate.

### COUNT VI:  BAD FAITH (42 Pa.C.S.A. §8371)

### (Jeannette Trust v. LNL)

95.   Plaintiff incorporates by reference the averments contained in Paragraphs 1 through 94, inclusive, as if fully set forth herein.

96.   By June 24, 2011 at latest, Plaintiff provided LNL with all the facts and documentation necessary for LNL to confirm that payment had never been delivered to the proper beneficiary on policy no. 0005621125, the Jeannette Trust

97.   Despite repeated demand, in writing and by telephone, LNL has refused to pay the $150,000 life insurance benefit on policy no. 0005621125.

98.   LNL's refusal to pay the amount owed on policy no. 0005621125 constitutes bad faith pursuant to 42 Pa.C.S.A. § 8371.

Case ID: 110603223

WHEREFORE, for all the foregoing reasons, the Jeannette Trust demands judgment in its favor and against the defendant, Lincoln National Life Insurance Company, in the amount of $150,000, plus interest at a rate of prime rate plus 3%, plus punitive damages, plus attorneys' fees, and such other and further relief as the Court may deem appropriate.

/s/ Craig F. Turet, Esquire
Craig F. Turet, Esquire
Attorney I.D. No. 53662
1801 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
(267)338-1307

Attorneys for Plaintiffs,
The Jeannette D. Pflaumer Trust
Dated October 20, 1983 and
The William H. Pflaumer Trust Dated
December 31, 2011

## VERIFICATION

I, Jeannette Pflaumer Tierney, trustee of the Jeannette D. Pflaumer Trust Dated October 20, 1983, hereby attest that I am authorized to make this Verification on behalf of the Jeannette D. Pflaumer Trust Dated October 20, 1983 and state that the averments contained in this Complaint are true and correct to the best of my knowledge, information and belief. This Verification is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

DATED: 6-29-11

_____
Jeannette Pflaumer Tierney

### VERIFICATION

I, Jeannette Pflaumer Tierney, trustee of the William H. Pflaumer Trust Dated December 31, 1981, hereby attest that I am authorized to make this Verification on behalf of the William H. Pflaumer Trust Dated December 31, 1981 and state that the averments contained in this Complaint are true and correct to the best of my knowledge, information and belief. This Verification is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Jeannette Pflaumer Tierney

DATED: 6 29 11



# EXHIBIT A

## IRREVOCABLE DEED OF TRUST

I, JEANNETTE D. PFLAUMER, of Drexel Hill, Delaware County, Pennsylvania, Settlor, do hereby irrevocably grant, transfer, assign and set over to WILLIAM ELLIOTT, MARK K. KESSLER, HARVEY W. GROSSMAN, PHILIP M. SHIEKMAN and ROBERT L. PFLAUMER, hereinafter referred to as "Trustees," the property listed in the schedule annexed hereto and made a part hereof, together with any other property, real or personal, and whether in the form of insurance, insurance proceeds, property transferred under any pension or profit sharing plan or some other form, that may, from time to time, be added to the trust by me or any other person, by will, deed or otherwise, such property and additions being hereinafter called "principal," IN TRUST, to hold, administer, invest and reinvest the same and to distribute the net income therefrom and said principal as hereinafter provided:

### FIRST
### Trust During Lifetime of Settlor - Withdrawal Rights

During my lifetime:

1.1  Trustees shall pay the net income, if any, at least annually to and among such one, more than one or all of the group composed of my husband, my children and the issue of my children, to the extent and in such amounts or proportions as Trustees, in their absolute discretion, may from time to time deem desirable.  To avoid any uncertainty, I declare it to be my intention under this provision, and I so direct, that any one or more than one of the group designated above may be wholly excluded from any or all of the distributions, that all of such group need not be treated equally or proportionally, and that the pattern followed in one distribution need not be followed in any subsequent distribution, and if, upon the expiration of sixty (60) days after the end of any taxable year of this trust, Trustee shall not have distributed any or all of the net income as aforesaid, all such undistributed income shall be paid to my husband.

1.2  Any provision of paragraph 1.1 hereof to the contrary notwithstanding, during any period when I am not married, Trustee shall apply the net income to the payment of premiums on any insurance policies owned by Trustee insuring my life.  Any income not so used during such period shall be accumulated and added to the principal hereof.

1.3   If, at the time the original principal hereof is set over
to Trustees, or if, at any time or times thereafter, any
addition is made to principal which, in any such event, is
accompanied by a written notice from the donor or donors
stating that such original principal or addition, or a
specific part of such original principal or addition,
shall be subject to withdrawal under the provisions of
this paragraph, then:

1.3.1   Trustees shall (within seven (7) days of the re-
ceipt of such notice from the donor or donors)
notify, in writing, each of my husband and my
children who is or are living at the date such
transfer is made and the then living issue of any
deceased child of mine, of such original principal
transfer, such addition or such part thereof, as
the case may be, which is, pursuant to the afore-
said notice from the donor or donors, subject to
withdrawal.   In no event shall such notice be given
after December 31 in the calendar year in which
such original principal or such addition is set
over to this Trust.   If any beneficiary to whom
notice is required to be given hereunder is then
under any legal disability, such notice shall be
given to the legal guardian of such beneficiary or,
if no legal guardian has been appointed, to one of
such beneficiary's parents who is not the donor
thereof.

1.3.2   Each of my husband and my children, or the issue of
a deceased child of mine, who is entitled to re-
ceive a notice pursuant to the provisions of
subparagraph 1.3.1 of this Article FIRST shall
thereupon have the non-cumulative, unrestricted
right for a period of thirty (30) days from the
date of such notification to demand and immediately
receive from this trust a distribution to himself
or herself of such amount as may be specified in
the aforesaid notice from the donor or donors, or
if such notice shall not so specify, of an amount
equal to the total amount of such original prin-
cipal or such addition, as the case may be, divided
by the number of beneficiaries hereunder who are
entitled to receive notice of a withdrawal right;
provided, however, that the amounts subject to
withdrawal hereunder shall be limited as follows:

1.3.2.1   With respect to my husband, his aggregate
right of withdrawal in any calendar year
shall be limited to the lesser of:  (i)
the maximum amount allowable, at the time
of such original principal transfer, or

-2-

such addition, as the, case may be, as an exclusion from Federal taxable gifts under Section 2503 of the Internal Revenue Code; and (ii) the maximum amount which my husband may have a power to withdraw without having a lapse of such power in any year constitute a release of a power of appointment, which release would be taxable in the estate of, or to, my husband for either Federal Estate Tax or Federal Gift Tax purposes under Section 2041 or 2514, respectively, of the Internal Revenue Code.

1.3.2.2   With respect to any child of mine or any issue of a child of mine, such child's or issue's aggregate right of withdrawal in any calendar year shall be limited to the greater of: (i) the maximum amount allowable at the time of such original principal transfer, or such addition, as the case may be, as an exclusion from Federal taxable gifts under Section 2503 of the Internal Revenue Code; and (ii) the maximum amount which such child or issue may have a power to withdraw without having a lapse of such power in any year constitute a release of a power of appointment, which release would be taxable in the estate of, or to, such child or issue for either Federal Estate Tax or Federal Gift Tax purposes under Section 2041 or 2514, respectively, of the Internal Revenue Code.

1.3.3   Such non-cumulative demand right shall be exercisable only by a written instrument executed by the beneficiary who has such right and delivered to Trustees. If any beneficiary who has such right is under any legal disability, such written instrument of demand shall be executed by his or her legal guardian, or, if no guardian has been appointed, by one of such beneficiary's parents who is not the donor, and, in any such case, such guardian or parent shall act solely on behalf of such legally incapacitated beneficiary in making such demand and shall receive such distribution for such beneficiary's sole benefit.

1.3.4   Upon receipt by Trustees of any proper written instrument of demand, Trustees shall promptly satisfy such demand in cash or by distribution of property (including an undivided interest in any insurance policy owned by Trustees) of equivalent

-3-

current value (determined in the same manner as
such value would be determined for the donor's
Federal Gift Tax purposes), and, to this end, Trus-
tees shall, at all times during which such demand
right is outstanding and exercisable, retain suf-
ficient liquid funds or transferable assets in this
trust to satisfy such right of demand should it be
exercised.

1.3.5   In the event any beneficiary who may make a demand
hereunder shall not make such demand within thirty
(30) days from the date of notification of such
demand right, or in the event Trustees shall re-
ceive, at any time within such thirty (30) day
period, a written statement from such beneficiary
(or from a person authorized hereunder to act on
behalf of such beneficiary) irrevocably declining
to make such demand of the amount of property which
would thereby be distributable to such beneficiary,
the right of such beneficiary to receive a dis-
tribution of such original principal or such addi-
tion, or any part thereof, shall thereupon lapse,
and such beneficiary shall thereafter have no
further demand right, exercisable by himself, her-
self or any other person acting on his or her
behalf in any capacity, with respect to such orig-
inal principal or such addition.

1.3.6   It is my intention that the principal of this trust
(including the proceeds of any insurance policy on
my life, which policy constitutes part of such
principal) shall not be included in my gross estate
for Federal Estate Tax purposes, and, accordingly,
any provision of this Deed of Trust which may ap-
pear to conflict with or in any way to defeat such
intention shall be so construed and applied as to
accomplish such intention, or, if such construction
and application is not possible, shall be con-
sidered null and void and of no effect.

## SECOND
### Trusts After Death of Settlor

After my death, Trustees shall hold all principal (including
any accumulated income added to principal) as a separate trust
under this Article SECOND, shall keep the principal of such
trust invested and shall distribute the net income therefrom
and the principal thereof as follows:

-4-

2.1   If any part of the principal hereof which consists of any insurance proceeds payable to Trustees as a result of my death is determined to be includable in my Federal gross estate under Section 2035 or any other Section of the Internal Revenue Code, then, if my husband survives me, Trustees shall hold such taxable proceeds as a separate trust (a Marital Deduction Trust) under this paragraph 2.1 and, thereafter, with respect to such Trust:

2.1.1   During the lifetime of my husband:

    2.1.1.1   The entire net income shall be paid only to my husband at least quarter-annually.

    2.1.1.2   Trustees may pay to or apply for the benefit of only my husband as much of the principal, without any limitation as to amount, as Trustees, in their absolute discretion, may from time to time deem necessary for the health, maintenance or support of my husband.

2.1.2   Upon the death of my husband:

    2.1.2.1   The accrued income, if any, shall be paid to the estate of my husband.

    2.1.2.2   The then remaining principal, if any, shall be paid to any one, more than one or all of the group, composed of my issue and/or such entity or entities described in Section 2055(a) of the Internal Revenue Code, or any similar statutory provision then in effect, in such amounts or proportions, for such estates or interests, and upon such terms, conditions or trusts, as my husband may appoint by will containing an express reference to this general power of appointment.

    2.1.2.3   If my husband fails, wholly or partly, effectively to exercise such power of appointment, whether by non-exercise or by an exercise which is for any reason wholly or partly ineffective, then, upon the death of my husband, the unappointed principal shall be distributed as follows:

        2.1.2.3.1   Trustees shall pay an amount equal to any increase in federal, state or other death taxes with respect to the taxable estate of my husband caused

-5-

by the inclusion in it, for such tax purposes, of any of the principal of this trust, such increase to be measured by the difference, if any, between such taxes actually payable and such taxes as would have been payable if no part of such principal had been included in the taxable estate of my husband, and, to the extent that Federal Estate Tax is so payable from this trust, if the principal of this trust shall then contain any United States Treasury Bonds redeemable at par in payment of Federal Estate Tax (commonly known as "Flower Bonds"), such bonds shall first be used in making such payment of Federal Estate Tax. Such payments may be made by Trustees either directly or to the personal representatives of my husband, whose written statement to Trustees as to the amounts payable may be accepted by Trustees as being correct, and Trustees shall have no responsibility to see to the application of any such payments.

2.1.2.3.2   The balance shall be added to, and thereafter treated as if it had originally been part of, the principal of the trust under paragraph 2.2.3 of Article SECOND hereof.

2.1.3. In the event my husband (or his Executor, Administrator, Guardian or agent under a Power of Attorney) disclaims all or any part of my husband's interest in the trust under paragraph 2.1 of this Article SECOND, such disclaimed interest shall be added to, and thereafter treated as if it had originally been part of, the trust under paragraph 2.2.1 of this Article SECOND, in which event my husband shall be the life income beneficiary of such Residuary Trust, unless he (or his Executor, Administrator, Guardian or agent under a Power of Attorney) expressly disclaims such life interest.

2.2   With respect to any principal of this Trust which is not a part of the principal of the trust set apart under paragraph 2.1 hereof or which shall become a part of any trust under this paragraph 2.2:

-6-

2.2.1   If my husband survives me, thereafter during the lifetime of my husband:

2.2.1.1   The net income shall be paid at least quarter-annually to and among such one, more than one or all of the group composed of my husband and my children and the issue of my children, to the extent and in such amounts or proportions as Trustees, in their absolute discretion, may from time to time deem desirable. To avoid any uncertainty, I declare it to be my intention under this provision, and I so direct, that any one or more than one of the group designated above may be wholly excluded from any or all of the distributions, that all of such group need not be treated equally or proportionally, and that the pattern followed in one distribution need not be followed in any subsequent distribution, and if, upon the expiration of sixty (60) days after the end of any taxable year of this trust, Trustees shall not have distributed any or all of the net income as aforesaid, all such undistributed income shall be paid to my husband.

2.2.1.2   If and when the principal of the trust under paragraph 2.1 of this Article SECOND shall have been exhausted by payments as provided in subparagraph 2.1.1.2 of this Article SECOND, Trustees may pay to or apply for the benefit of my husband as much of the principal of this trust as Trustees, in their absolute discretion, may from time to time deem necessary for the health, maintenance or support of my husband.

2.2.1.3   Trustees may pay to or apply for the benefit of any one or more than one of my children and their issue as much of the principal of this trust as Trustees, in their absolute discretion, may from time to time deem necessary for the health, maintenance, support or education of any of them, and no such payments of principal to or for any such child or issue shall, at the time of any subsequent division or distribution of this trust, be charged against the share of principal represented

Case ID: 110603223

by the child, child whose issue or issue who, is benefited thereby,

2.2.1.4  Payments of principal may be made under the preceding subparagraphs 2.2.1.2 and 2.2.1.3 whether or not, or regardless of the extent to which, the beneficiary to or for the benefit of whom principal payments are made has participated in the distribution of income pursuant to the provisions of the preceding subparagraph 2.2.1.1, it being my intention, and I so direct, that Trustees shall have absolute discretion as to whether any beneficiary shall participate in a payment of income, a payment of principal, both or neither.

2.2.2  Upon the death of my husband if he survives me or upon my death if my husband does not survive me, if there is then living any child of mine or any issue of any child of mine, Trustees shall distribute the sum of One Million Dollars ($1,000,000) to the Trustees, and their successors in trust, under the BEER WORLD INDENTURE OF TRUST executed by WILLIAM H. PFLAUMER, as Grantor, on December 29, 1981, in which he named JEANNETTE PFLAUMER, HARVEY W. GROSSMAN, MARK K. KESSLER, ROBERT D. PFLAUMER, JEANNETTE D. PFLAUMER, JR., WILLIAM H. PFLAUMER, JR., RONALD PFLAUMER, BARBARA D. PFLAUMER and FRED PFLAUMER as Trustees, for the uses and purposes, and upon the terms, conditions and trusts therein provided, and the balance of then remaining principal shall be divided into equal shares, each such share to be held in a separate trust, so there will be one such share for each child of mine then living and one such share for each child of mine then dead leaving issue then living, and thereafter:

2.2.2.1  As to the share set apart for a child of mine who is then living, until such child shall reach the age of forty (40) years or shall die prior to reaching such age:

2.2.2.1.1  Until such child shall reach the age of twenty-five (25) years, Trustees may pay to or apply for the benefit of such child as much of the net income from the share of such child as they, in their absolute discretion, determine, and any such income not so paid or applied shall be accumulated and added to the principal of the share of such child.

-8-

2.2.2.1.2   When such child shall reach the age
of twenty-five (25) years and there-
after, the net income from the share
of such child shall be paid to such
child at least quarter-annually.

2.2.2.1.3   When such child shall reach the age
of thirty (30) years, one-third (1/3)
of the then remaining principal of
such share shall be paid to such
child, and when such child shall
reach the age of thirty-five (35)
years, one-half (1/2) of the then
remaining principal of such share
shall be paid to such child, and when
such child shall reach the age of
forty (40) years, the balance of the
then remaining principal of such
share shall be paid to such child;
provided, however, that if, at the
time of setting apart the share of
such child, such child shall already
have reached any of the ages above
specified, the corresponding portion
or portions of the then remaining
principal of such share, which such
child would have received upon reach-
ing such age or ages as would be
required for the payment of such
portion or portions to such child if
this share for such child had then
been set apart, shall thereupon be
paid to such child.

2.2.2.1.4   Whether or not such child shall have
reached or passed the age of thirty
(30) years, Trustees may, in addi-
tion, pay to or apply for the benefit
of any one, more than one or all of
the group composed of such child and
the issue of such child as much of
the principal of the share of such
child as Trustees, in their absolute
discretion, may from time to time
deem desirable for the best interests
(as hereinafter defined in paragraph
5.2 of Article FIFTH hereof) of any
of such group. Any payments so made
out of principal shall not be reim-
bursed out of income, but Trustees
may, in their absolute discretion,

-9-

charge all or any part of such pay-
ments of principal against the next
periodic installment of principal
payable as provided in subparagraph
2.2.2.1.3 of this Article SECOND.

2.2.2.2  As to the share set apart for a child of
mine who is then living, if such child
shall die before reaching the age of forty
(40) years, then, upon the death of such
child, or, as to the share set apart for a
child of mine who is not then living and
leaves issue then living, then, upon the
death of the later to die of my husband
and me:

2.2.2.2.1  The unpaid income and the then re-
maining principal of the share of
such child shall be paid to any one
or more of the issue of such child,
in such amounts or proportions, for
such estates and interests, and upon
such terms, conditions or trusts, as
such child may appoint by will con-
taining an express reference to this
power of appointment, whether or not
such will is executed before or after
the date of my death and whether or
not such child survives me.

2.2.2.2.2  If such child fails, wholly or part-
ly, effectively to exercise such
power of appointment, whether by
non-exercise or by an exercise which
for any reason is wholly or partly
ineffective, all unappointed income
and principal shall be paid to the
then living issue of such child, per
stirpes, or, in default of such
issue, shall be added to the other
share or shares into which principal
would be divided had the death of the
later to die of my husband and me
then occurred, for the same uses and
purposes and upon the same terms,
conditions and trusts as are herein
provided with respect to such other
share or shares, or, if there shall
be no one then living who is entitled
to take such other share or shares,
such unappointed income and principal
shall be paid equally to such person

or persons who would be entitled to inherit either from my husband or from me under the intestate laws of the Commonwealth of Pennsylvania in effect at the time of the death of the last to die, of such child, my husband and me, and as if my husband and I had both then died intestate, seised and possessed thereof, residents of Pennsylvania, leaving no spouse or issue surviving either of us, and in the proportions that would be determined under said intestate laws then in effect.

2.2.3   Upon the death of my husband if he survives me or upon my death if my husband does not survive me, if there is not then living any child of mine or any issue of a child of mine, the then remaining principal shall be paid equally to such person or persons who would be entitled to inherit either from my husband or from me under the intestate laws of the Commonwealth of Pennsylvania in effect at the time of the death of the later to die of my husband and me, and as if my husband and I had both then died intestate, seised and possessed thereof, residents of Pennsylvania, leaving no spouse or issue surviving either of us, and in the proportions that would be determined under said intestate laws then in effect.

2.2.4   If my husband (or his Executor, Administrator, Guardian or agent under a Power of Attorney) disclaims all or any part of my husband's interest in the trust under paragraph 2.2.1 of this Article SECOND, such disclaimed interest shall pass upon the same terms, conditions and trusts provided for in paragraph 2.2.2 or paragraph 2.2.3 of this Article SECOND, as if my husband had predeceased me.

2.2.5   If, at the time for any distribution of principal from the share set apart for a child of mine to such child, such distribution to such child would include any shares of C. SCHMIDT & SONS, INC. and/or K.M.A. LEASING, INC., both Pennsylvania corporations, and if, at such time, Trustees hereunder shall, in their sole and absolute judgment and discretion, determine that the distribution of such shares would result in a violation of the Pennsylvania Liquor Code, Title 47, Pennsylvania Consolidated Statutes, or any similar statutory provisions then in effect, and determine that such

-11-

distribution to such child should not, therefore, be made, then Trustees may retain such shares beyond the time when such shares would be distributable to such child and until such time during the life, and no longer than until the death, of such child as Trustees shall, in their sole and absolute judgment and discretion, determine that such distribution should be made, whereupon such distribution shall be made to such child or pursuant to the provisions of this Article SECOND as if such child had survived the later to die of my husband and me and had died before having reached the age of Forty (40) years.

2.2.6   At any time that Trustees hereunder shall hold shares of C. SCHMIDT & SONS, INC. and/or K.M.A. LEASING, INC., Trustees shall have no duty to any beneficiary, whether immediate or remote, to make such shares income producing or to convert such shares into property which would be income producing.

2.2.7   Whenever, in this Trust, I have referred to shares of either C. SCHMIDT & SONS, INC. or K.M.A. LEASING, INC., such shares shall include any shares or any other interest in any successor thereto under any plan of reorganization, consolidation, merger or other similar plan.

## T H I R D
## Termination of Trusts

3.1   Whenever, after the death of my husband and during the continuance of any trust under Article SECOND or paragraphs 4.1 or 4.3 of Article FOURTH hereof, Trustees, in their absolute discretion, determine that the amount of the then remaining principal of such trust does not warrant the cost of continuing such trust or that the continuance of such trust would be otherwise impractical for any reason, Trustees may, in their absolute discretion, terminate such trust and pay the then remaining principal and the undistributed income, if any, of such trust, absolutely and free of all trusts, to the person then entitled to receive the income of such trust. Upon any such termination, all rights of all other persons who might otherwise have had interests as succeeding income beneficiaries or in remainder shall cease. If any beneficiary to whom payment is to be made is then a minor, Trustees may make such payment to a parent of such minor, to a guardian of the estate of such minor, to a guardian of the person of

-13-

such minor, or to any person or organization taking care of such minor, or to such Custodian (who may be a Trustee hereunder) for such minor under the Pennsylvania Uniform Gifts to Minors Act as they may select, or deposit such payment with a bank or savings institution in any savings account in the name of such minor, payable to such minor at majority, or apply such payment to the purchase of any certificate of deposit issued by a bank or savings institution in the name of such minor, payable to such minor at majority. If any beneficiary to whom payment is to be made is, in the absolute discretion of Trustees, deemed then to be mentally or physically incapacitated, Trustees may make such payment to the guardian of the estate of such beneficiary, or to any person or organization taking care of such beneficiary. In any of the above events, the receipt of such payee or proof of any such deposit or proof of any such purchase of a certificate of deposit shall be a full and sufficient acquittance.

3.2   The power of termination granted to Trustees under the provisions of paragraph 3.1 hereof may be exercised in part if the principal which would be distributed to a child of mine pursuant to the exercise of such power of termination would include any shares of C. SCHMIDT & SONS, INC. and/or K.M.A. LEASING, INC. and if Trustees hereunder shall, in their sole and absolute judgment, determine that the distribution of such shares would result in a violation of the Pennsylvania Liquor Code, Title 47, Pennsylvania Consolidated Statutes, or any similar statutory provisions then in effect, and shall determine that such distribution to such child should not, therefore, be made. In such instance, Trustees may retain said shares of either or both said companies in trust for such period and upon the same terms and conditions as would apply to such trust under the provisions of Article SECOND or paragraphs 4.1 or 4.3 of Article FOURTH hereof, and Trustees may distribute the balance of principal (other than said shares) of such trust as provided in paragraph 3.1 hereof. If, during the time said shares are so held in further trust, Trustees shall, in their sole and absolute judgment and discretion, determine that said shares should be distributed, Trustees may exercise the power of termination provided in paragraph 3.1 hereof and may terminate said further trust, whereupon Trustees shall distribute said shares of said companies as if they had originally been a part of the other principal of such trust at the time of the distribution thereof, or, if the beneficiary to whom such other principal of such trust was distributed is not then living, Trustees shall distribute such shares to such person or persons who would be entitled to take the principal of such trust pursuant to the provisions of Article SECOND hereof as if such deceased beneficiary who would have received said shares had died prior to the time for distribution of the principal of such beneficiary's trust

-13-

under said Article SECOND.

## F O U R T H
### Minors, Incapacitated Beneficiaries or Emergencies

4.1 Whenever, under the provisions of Article SECOND or paragraph 3.2 of Article THIRD hereof, principal is to be paid to a minor, it shall be retained by Trustees, and as much of it, and of the income from it, as Trustees, in their absolute discretion, may from time to time deem desirable, shall be paid by Trustees for the best interests (as hereinafter defined in paragraph 5.2 of Article FIFTH hereof) of such minor, and any such income not so paid shall be accumulated and the unexpended principal and income, if any, shall be paid to the minor at majority, or, if such minor dies before reaching majority, to the estate of such minor upon the death of such minor.

4.2 Whenever, under the provisions of Article SECOND or paragraph 3.2 of Article THIRD hereof, income is to be paid to a minor, as much of such income as Trustees, in their absolute discretion, may from time to time deem desirable, shall be paid by Trustees for the best interests (as hereinafter defined in paragraph 5.2 of Article FIFTH hereof) of such minor, and the unexpended income, if any, shall be accumulated and paid to the minor at majority, or, if such minor dies before reaching majority, to the estate of such minor upon the death of such minor.

4.3 Whenever, under the provisions of Article SECOND or paragraph 3.2 of Article THIRD hereof, principal or income is to be paid to a beneficiary and such beneficiary shall, in the absolute discretion of Trustees, be deemed incapacitated by reason of advanced age, illness or other cause, or whenever, in the absolute discretion of Trustees, they deem that emergency shall require it, in any such event, as much of such principal or income as Trustees, in their absolute discretion, may from time to time deem desirable, shall be paid by Trustees for the best interests (as hereinafter defined in paragraph 5.2 of Article FIFTH hereof) of such beneficiary and the unexpended principal and income, if any, shall be accumulated and paid by Trustees to such beneficiary when, in the absolute discretion of Trustees, they deem that the incapacity or emergency shall have ceased, or, if such beneficiary dies, to the estate of such beneficiary upon the death of such beneficiary.

4.4 Trustees may disburse any of the amounts so payable for a beneficiary during minority, incapacity or emergency, as provided in paragraphs 4.1, 4.2 and 4.3 of this Article

-14-

Case ID: 110603223

FOURTH, without the intervention of a guardian or order of Court, either by payment of bills directly, by payments to the beneficiary, his or her dependents, his or her duly appointed guardian or any person or institution taking care of the beneficiary, or by payments to such person or persons as Trustees may select, and the receipt of any such payee shall be a full and sufficient acquittance.

4.5   Whenever, in this Deed of Trust, the term "minor," "minority" or "majority" is used, a person shall be deemed to have attained majority when such person reaches the age of twenty-one (21) years and shall be deemed to be a minor so long as such person is under the age of twenty-one (21) years, any statute now or hereafter in force to the contrary notwithstanding.

### F I F T H
### Trustees' Discretion to Pay Principal - Best Interests of Beneficiary

5.1   The exercise of discretion by Trustees in determining whether or not, and the extent to which, principal shall be paid to or applied for the benefit of any beneficiary under the provisions of subparagraphs 2.1.1.2, 2.2.1.2, 2.2.1.3 or 2.2.2.1.4 of Article SECOND hereof or paragraphs 4.1 or 4.3 of Article FOURTH hereof, shall be absolute, final and conclusive, and, without limiting the generality of the foregoing, in the exercise of such discretion, Trustees may, but need not, require the beneficiary to or for whom principal is being paid or applied to expend any part of his or her own principal assets, and Trustees may, but need not, take into account any income such beneficiary may then be deriving from such assets or from any other source, and no payments made from principal shall be reimbursed out of income.

5.2   Whenever, in this Trust, I have used the term "best interests" in referring to the standard by which Trustees shall determine whether or not to pay or apply principal or income to or for the use of a beneficiary, it is my intention that Trustees shall liberally construe such term to include payments to or for the welfare, comfort, health, maintenance, support, education or physical or mental well-being of such beneficiary and that Trustees shall consider the "best interests" of the immediate beneficiary to be primary and the interest of any remainderman to be secondary.   By way of illustration only, and without intending the following to create any limitation on the exercise of Trustees' absolute discretion in determining what may be in the "best interests" of a beneficiary,

-15-

Trustees may pay or apply principal to or for a beneficiary: to meet such beneficiary's living expenses and expenses of emergencies, medical, dental and nursing care: to allow a beneficiary to travel, whether for pleasure, education or other purposes; to make a down-payment on, purchase or furnish, a personal residence; for a marriage gift; to allow a beneficiary to obtain the best possible education (including private primary and secondary, undergraduate, graduate, professional or vocational schooling); or, to purchase, initiate or invest in a business, even though such business might be one in which Trustees would not or could not invest. It is also my intention that, in exercising their discretion hereunder, Trustees feel free to use principal for the benefit of my minor children even though such use may also benefit any person who is the guardian of the persons of such children. No provision of this paragraph 5.2 shall be construed to change, limit or affect the provisions of the foregoing paragraph 5.1 of this Article FIFTH.

## S I X T H
### Non-apportionment of Income

Income of the trusts under paragraph 2.2 of Article SECOND hereof shall not be apportioned between a deceased income beneficiary and any succeeding beneficiary. All such income not actually received by Trustees prior to the date of death of an income beneficiary shall be treated as if it had accrued thereafter.

## S E V E N T H
### Rights in Income

Any trust hereunder which may be funded from a larger share shall be entitled to its proportionate share of income from the time such trust is deemed to begin until the actual funding thereof, and during such period, the income attributable to such trust may be distributed by Trustees directly to the beneficiary or beneficiaries of such trust, pursuant and subject to the provisions of such trust, and the receipt of such beneficiary or beneficiaries shall be a full and sufficient acquittance.

## E I G H T H
### Spendthrift Provisions

Wherever, in this Deed of Trust, I have provided for the payment of income or principal to any beneficiary, I direct that

-16-

the same shall not be subject to attachment, execution, seques-
tration or any order of Court, and that the beneficiary shall
have no power to pledge, assign, convey or anticipate the same,
nor shall such income or principal be liable for the contracts,
debts, obligations, engagements or liabilities of any bene-
ficiary, but such income and principal shall be paid by Trus-
tees to the beneficiary, free and clear of all assignments,
attachments, anticipations, levies, executions, decrees and
sequestrations, and shall become the property of the bene-
ficiary only when actually received by such beneficiary.

## N I N T H.
### Payment of Taxes

9.1   All federal, state and other death taxes of any nature, if
any, imposed or payable by reason of my death, together
with interest and penalties thereon, if any, with respect
to any principal passing under this Deed of Trust which is
part of my gross estate for such tax purposes shall be
paid out of the principal of the trust under paragraph 2.2
of Article SECOND hereof, and no part of such taxes shall
be charged against the trust, if any, under paragraph 2.1
of Article SECOND hereof or be apportioned to or reim-
bursed by any beneficiary or recipient under this Deed of
Trust.

9.2   All transfer taxes arising in connection with any genera-
tion skipping transfer hereunder shall be paid as provided
in Chapter 13 of Subtitle B of the Internal Revenue Code.
Accordingly, any transfer taxes arising in connection with
a taxable distribution shall be paid by the distributee,
and any transfer taxes arising in connection with a tax-
able termination shall be paid from the corpus of the
applicable trust.   Whenever, in this Deed of Trust, the
term "generation skipping transfer," "taxable distribu-
tion" or "taxable termination" is used, such term shall
have the same meaning as such term would have pursuant to
Chapter 13 of Subtitle B of the Internal Revenue Code.

9.3   Payments under paragraph 9.1 of this Article NINTH may be
made to my personal representatives, whose written state-
ment to Trustees of the amounts so payable may be accepted
by Trustees as being correct, and Trustees shall have no
responsibility to see to the application of such pay-
ments.   Neither my estate, my personal representatives,
nor any beneficiary of my estate shall be required to
reimburse Trustees for any such payments by Trustees.

9.4   I authorize Trustees, in their absolute discretion to
adjust, compromise, settle and anticipate any and all

-17-

Case ID: 110603223

taxes, if any, payable hereunder at such time or times as
they, in their absolute discretion, may deem desirable,
whether before or after the same become due; provided,
however, that any postponed tax on a future interest or
remainder in any trust under Article SECOND hereof shall,
when paid, be charged against that portion of principal
with respect to which such tax is imposed. I further
authorize Trustees to make or to assent to such election
with respect to the property passing under paragraph 2.1 of
Article SECOND hereof as may be required under Section
2056(b)(7) of the Internal Revenue Code to make such prop-
erty "qualified terminable interest property" so that it
would qualify for the marital deduction available under
said Section 2056 of the Internal Revenue Code.

## TENTH
### Powers of Trustees

Trustees, subject, however, to the limitations stated in Arti-
cles ELEVENTH and TWELFTH hereof, shall have the following
powers, which shall be exercisable without leave of Court, in
addition to and not in limitation of any authority vested in
them by law and by other provisions of this Deed of Trust,
which shall be applicable to all property, whether principal or
income, including any property added hereto or any property
held for minors and incapacitated beneficiaries, and which
shall be effective until actual distribution of all property:

10.1   To retain any property, real or personal, at any time
received by them for such lengths of time as they, in
their absolute discretion, may deem desirable, without
any liability for such retention, to invest and reinvest
principal and undistributed income, and to alter, vary
and change investments and reinvestments. In the exer-
cise of any or all of the foregoing powers, they shall
not be confined to what are known as "Legal Invest-
ments," any statute now or hereafter in force to the
contrary notwithstanding, nor be restricted by any
principle of investment diversification, either as to
type or amount, nor be restricted by any consideration
of risk or productivity, nor be liable for any invest-
ments or retention of investments made by them in good
faith, it being my intention to give to them the broad-
est power of investment.

10.2   To sell, exchange or purchase, or to grant or take an
option to sell, exchange or purchase, property, real or
personal, for such prices, for cash or credit, with or
without security, upon such terms, in such way or man-
ner, for such interests or estates, and at public or

-18-

Case ID: 110603223

private sales, as they, in their absolute discretion, may deem advisable, and to join in the partition of property, real or personal, to mortgage or pledge property, real or personal, and, in the event of a sale, to make good transfers, assignments and conveyances to the purchaser or purchasers without liability on the latter to see to the application of the purchase moneys.

10.3   To lease or to grant an option to lease property, real or personal, upon such terms and for any period of time, any statutory limitation with respect to such period of time to the contrary notwithstanding, as they, in their absolute discretion, may deem advisable.

10.4   To repair, alter or improve any property, real or personal, held hereunder at any time.

10.5   To exercise any option or other similar right to subscribe for stocks, bonds, debentures, certificates or other instruments in the nature thereof which may be given to them as the holders of stocks, bonds, debentures, certificates or other instruments in the nature thereof.

10.6   To assent to, join in, dissent from, oppose or vote with respect to any plan of merger, consolidation, exchange, reorganization, lease or mortgage, voting trust plan or other concerted action of security holders of any corporation in which they may hold stocks, bonds, debentures, certificates or other instruments in the nature thereof, or to delegate discretionary duties with respect thereto and to deposit such stocks, bonds, debentures, certificates or other instruments in the nature thereof under any such plan.

10.7   To allocate to principal or to income, or to apportion between principal and income, any and all stock dividends, stock rights, gains on sales of stock, extraordinary dividends and liquidations of investments, in such manner and to such extent as they, in their absolute discretion, may deem equitable.

10.8   To purchase investments at a premium or at a discount, and to charge or credit such premium or discounts to principal or to income, or partly to principal and partly to income, as they, in their absolute discretion, may deem equitable.

10.9   To cause the investments held hereunder at any time, or any part thereof, to be registered in their names or in the name or names of their nominee or nominees, without disclosing any fiduciary relationship, or to hold said

-19-

investments unregistered and in such form that they will pass by delivery.

10.10   To deposit and keep on deposit, in checking accounts, savings accounts or certificates of deposit, any or all moneys at any time received by them for such periods of time as they, in their absolute discretion, may deem advisable, and to delegate the power to draw thereon to any one or more of themselves or others.

10.11   To give proxies, both ministerial and discretionary, and to appoint agents and attorneys-in-fact for the transaction of business, being responsible only for due care in the selection of such person or persons.

10.12   To prosecute, defend, abandon, compromise, compound, adjust and settle any and all claims and demands in favor of or against any trust created hereunder, upon such terms and conditions and for such consideration as they, in their absolute discretion, may deem best.

10.13   To purchase, as investments of any trust created hereunder, any security or other property which may be a part of my estate at the time of my death or which may be a part of my husband's estate, or to lend to my estate such sums as may be required by my personal representatives, with or without collateral, or to make other loans (including loans to my husband's estate) of such sums and upon such terms, conditions and security, as they, in their absolute discretion, deem advisable and sufficient.

10.14   To borrow money from any source, for such periods of time and upon such terms or conditions as they, in their absolute discretion, may deem advisable, and to secure the repayment thereof by mortgage of real or personal property, pledge of securities or otherwise, without liability on the part of the lenders to see to the application thereof.

10.15   To pool the assets of some or all of the trusts under paragraph 2.2 of Article SECOND hereof for purposes of investment or administration, allocating to each of such trusts with respect to which this power is exercised an undivided interest in the pooled assets.

10.16   To charge any administration expense to principal or to income, or partly to principal and partly to income, as they, in their absolute discretion, may deem equitable.

10.17   Whenever they are required or permitted to divide or distribute any trust created hereunder, to make such

-20-

division or distribution in kind, in money, or partly in kind and partly in money, and in such manner and with such regard to the income tax basis thereof, as they, in their absolute discretion, shall determine.

10.18   To rent one or more safe deposit boxes and to delegate the right of access to any one or more of themselves or others.

10.19   To enter into a custody agreement with any bank or trust company for the safekeeping and custody of the properties and securities of any trust hereunder and to employ accountants, lawyers and investment counsel (including persons who are Trustees or beneficiaries hereunder) and to treat any charge therefor as an additional administration expense.

10.20   To purchase and hold, as assets of the trust, if any, under paragraph 2.1 of Article SECOND, United States Treasury Bonds redeemable at par in payment of Federal Estate Tax (commonly known as "Flower Bonds"), and, if they deem it desirable, to borrow money to fund such purchase from any source, for such periods of time and upon such terms and conditions as Trustees, in their absolute discretion, may deem advisable and to secure the repayment thereof by pledge of the bonds so purchased, other securities owned by them or otherwise, without liability on the part of the lender to see to the application thereof.

10.21   So that Trustees shall have the broadest powers in dealing with any business interest that may become a part of the principal hereof, whether made a part hereof or added hereto by me or any person by will, deed or otherwise, and without intending to limit the powers vested in them by the other provisions of this Deed of Trust or by law, I authorize Trustees:

10.21.1   To retain, without being restricted by any principal of investment diversification, any part or all of such interest as long as Trustees deem it advisable to do so.

10.21.2   To distribute any part or all of any such business interest in kind (subject, however, to the exercise of their judgment and discretion as provided in subparagraph 2.2.5 of Article SECOND hereof).

10.21.3   To sell any part or all of Trustees' interest in any such business at such time or times, to such persons (including any persons who are

-21-

Trustees or beneficiaries hereunder), for such prices, and upon such terms as Trustees may deem advisable.

10.21.4    To operate and to do anything that Trustees may deem advisable with respect to the operation, incorporation or liquidation of any such business, or any change in the purpose, nature or structure (in capital or otherwise) of any such business.

10.21.5    To delegate authority to any director, manager, partner or employee, and to pay adequate compensation to any such person even though he or she may also be a Trustee or beneficiary hereunder or may be employed by a Trustee or beneficiary hereunder.

10.21.6    To make additional investments in any such business.

10.21.7    In general, in their absolute discretion, to deal with any such business interest that they would have if they were the absolute owners thereof, and they shall not be held to personal liability for any shrinkage of income or loss of capital value that may be incurred in the course of the operation of any such business interest, except any shrinkage or loss that may result from their willful misconduct.

10.22    With regard to the exercise of any of the powers granted to the Trustees hereunder, either by law or by the provisions of this Deed of Trust, unanimous action by the Trustees shall not be required, and a majority of them may act for and on behalf of all of them.

E L E V E N T H
Miscellaneous Provisions Relating to
the Marital Deduction Trust

Whenever the term "marital deduction" is used in this Deed of Trust, it shall mean the marital deduction allowable under Section 2056 of the Internal Revenue Code or any similar benefit available under the Internal Revenue Code or any other law imposing Federal Estate Tax which may be in effect at the time I shall die.   It is my intention, and I so direct, that if there is established a trust for my husband under paragraph 2.1 of Article SECOND hereof, such trust shall have the effect of

-22-

Case ID: 110603223

giving to my estate a marital deduction, and, in furtherance of and not in limitation of the generality of the foregoing statement of intention, I direct the following:

11.1   Trustees, shall have full authority as they, in their absolute discretion, shall determine, without order of Court, to fund the trust under paragraph 2.1 of Article SECOND hereof in cash, in kind, or partly in cash and partly in kind, and to select the assets to be included therein, without the right in or on behalf of any beneficiary whose interest may be affected thereby to question the exercise of such discretion. Each asset so distributed in kind shall, for the purpose of funding the trust, be included at its value on the date of setting aside such asset to the principal of the trust under paragraph 2.1 of Article SECOND hereof. Any provision in this Deed of Trust to the contrary notwithstanding, in no event shall there be included in the trust under paragraph 2.1 of Article SECOND hereof any asset or the proceeds of any asset in respect to which a marital deduction for Federal Estate Tax purposes would not be allowable if so included. I specifically direct that no annuity or other payment, which is exempt from Federal Estate Tax pursuant to Section 2039(c), (d) or (e) of the Internal Revenue Code of 1954, as amended, shall be included in the trust under Article SECOND hereof.

11.2   If any property which is a part of the trust under paragraph 2.1 of Article SECOND hereof shall be or become so unproductive that the income is not currently consistent with the value of such property, my husband may require Trustees either to make such property productive or to convert such property within a reasonable time to property which is currently productive.

11.3   The limited power given to my husband to appoint by will the principal of the trust under paragraph 2.1 of Article SECOND hereof shall be exercisable by my husband alone.

11.4   No payments to my husband out of the principal of the trust established under paragraph 2.1 of Article SECOND hereof shall be reimbursed out of income.

11.5   The "entire net income" of the trust under paragraph 2.1 of Article SECOND hereof to be paid to my husband shall not be less in any year than all of the income from the principal of the trust as required by the Internal Revenue Code to qualify the trust for the marital deduction for Federal Estate Tax purposes, regardless of whether any part thereof may be regarded as principal for trust accounting purposes, in which event, such principal, to the extent so required by the Internal Revenue Code,

Case ID: 110603223

shall be paid to my husband as if it were income.

11.6   No provision of this Deed of Trust shall in any way be operable, and no authority, power or discretion granted to Trustees under the provisions of this Deed of Trust or under any law shall be so exercisable with respect to the trust under paragraph 2.1 of Article SECOND hereof as to prevent my estate from obtaining a marital deduction and, to the extent that any provision could be so operable, or any authority, power or discretion so exercisable, such provision, authority, power or discretion shall be null and void and of no effect with respect to such trust.

## T W E L F T H
### Certain Powers Not To Be Exercised By
### Interested Trustees

No Trustee, including my son, ROBERT L. PFLAUMER, who is, will be or may be, or any of whose issue or spouse is, will be or may be, a beneficiary under this Deed of Trust shall participate in the exercise of any power granted to Trustees under any provision of this Deed of Trust involving the exercise of discretion to pay out of principal, to allocate between principal and income, to allocate income among income beneficiaries, to accumulate income, or to terminate any trust. Without limiting the generality of the foregoing, no such Trustee shall participate in the exercise of any such power under the provisions of subparagraphs 2.1.1.2, 2.2.1.1, 2.2.1.2, 2.2.1.3, 2.2.2.1.1 or 2.2.2.1.4 of Article SECOND hereof, Article THIRD hereof, paragraphs 4.1 or 4.3 of Article FOURTH hereof, or paragraphs 10.7, 10.8 or 10.16 of Article TENTH hereof. All of such powers shall be exercised by the Trustees, other than such interested Trustee, then entitled and qualified to act.

## T H I R T E E N T H
### Life Insurance Policies

The powers granted Trustees under this Article THIRTEENTH are in addition to and not in limitation of any other powers vested in Trustees by law or by other provisions of this Deed of Trust:

13.1   I, or any other person, may pay premiums on any life insurance policy held by Trustees under this Deed of Trust. Trustees shall be under no obligation to notify me of any premium payment requirements or of the non-payment of any premiums. Further, Trustees shall be under no obligation to advance Trustees' personal funds

-24-

for the payment of premiums for any life insurance policy held by any trust hereunder and shall be under no responsibility or liability of any kind in case any life insurance policy premiums are not paid due to the lack of available funds in any such trust; however, Trustees may apply any dividends received by Trustees on any life insurance policy to the payment of premiums thereon and may exercise any other options under any such policy. Upon notice at any time during the continuance of this Deed of Trust that the premiums due upon any policy are in default, or that premiums to become due will not be paid, either by me or by an other person, Trustees, in their absolute and uncontrolled discretion, may (without limiting the other options available to Trustees) apply any cash value attributable to such policy to the purchase of paid-up insurance or extended insurance, or may borrow upon such policy for the payment of premiums due thereon, or may accept the cash value of such policy upon its forfeiture. Consistent with the provisions of Article FIRST hereof, Trustees may use trust income to pay premiums on any insurance policy on my life.

13.2    Except as may be expressly withheld, Trustees are vested with all right, title and interest in and to any and all life insurance policies held by Trustees under this Deed of Trust, and Trustees are authorized and empowered to exercise and enjoy, for the purposes of this Deed of Trust and as absolute owners of any and all such policies of insurance, all of the options, benefits, rights and privileges under such policies, including without limitation, the right to borrow upon such policies, to pledge them, or any of them, for a loan or loans, to use policy dividends and cash values to reduce premiums, to purchase paid-up additions or term coverage, to sell or assign any or all such policies, to exercise any conversion privilege, to receive endowment or annuity payments, and to select any optional method of settlement. The insurance companies which have issued such policies are hereby authorized and directed to recognize Trustees as absolute owners of such policies of insurance and as being fully entitled to all options, rights, privileges and interest under such policies, and any receipts, releases or other instruments executed by Trustees in connection with such policies shall be binding and conclusive upon the insurance companies and upon all persons interest in any trust created by this Deed of Trust. Except as may be expressly withheld, I hereby relinquish and assign to Trustees all right, incidents of ownership and powers in any such policies of insurance which have not already been assigned to Trustees by me and which I have a right to assign, and I will, at the request of Trustees, execute any instruments as may be required to effectuate or give notice of any such assignment and relinquishment.

Case ID: 110603223

13.3   Upon being advised of the death of any insured, Trustees shall make every reasonable effort to collect all sums due under life insurance policies on the life of the insured which are payable to Trustees.   Trustees are authorized to settle disputes on any life insurance policy held under this Deed of Trust or payable to Trustees, but Trustees shall not be required to maintain or enter into any litigation in connection with any such policy unless Trustees are first indemnified against all resulting expenses.

## F O U R T E E N T H
### Additions to and Irrevocability of this Deed of Trust

14.1   I and any other person with the approval and acceptance by Trustees, may add to the principal of the trusts by deed or will or otherwise.

14.2   Other than the right reserved by paragraph 14.1 of this Article FOURTEENTH, I declare this Deed of Trust to be irrevocable, without any right reserved to myself to amend or revoke this Deed of Trust, in whole or in part. The effect of this declaration has been fully explained to me.

## F I F T E E N T H
### Trustees

15.1   In the event either of WILLIAM ELLIOTT or PHILIP M. SHIEKMAN shall die, resign, be discharged or removed, or cease to act as a Trustee hereunder for any reason whatever, neither such vacancy shall be filled.

15.2   In the event MARK K. KESSLER shall die, resign, be discharged or removed, or cease to act as a Trustee hereunder for any reason whatever, I nominate, constitute and appoint FREDERICK H. VON CZOERNIG as a Trustee in his place or stead.   Such appointment shall become effective when accepted by the successor Trustee.

15.3   In the event HARVEY W. GROSSMAN shall die, resign, be discharged or removed, or cease to act as a Trustee hereunder for any reason whatever, I nominate, constitute and appoint JAMES BURNS as a Trustee in his place or stead. Such appointment shall become effective when accepted by the successor Trustee.

Case ID: 110603223

15.4  In the event ROBERT L. PFLAUMER shall die, resign, be discharged or removed, or cease to act as a Trustee hereunder for any reason whatever, I nominate, constitute and appoint JEANNETTE D. PFLAUMER, JR. as a Trustee in his place or stead. Such appointment shall become effective when accepted by the successor Trustee.

15.5  It is my intention that there shall always be at least two (2) disinterested individual Trustees acting hereunder; that is, two (2) individuals each of whom is not, will not be or may not be, and none of whose issue or spouse is, will be or may be a beneficiary under this Deed of Trust. It is also my further intention that there shall always be more disinterested individual Trustees acting hereunder than there are interested individual Trustees acting hereunder.

15.6  In the event any of FREDERICK H. VON CZOERNIG, JAMES BURNS or JEANNETTE D. PFLAUMER, shall die, resign, be discharged or removed, or cease to act as a Trustee hereunder for any reason whatever, each such vacancy, and any succeeding vacancy occurring thereafter, shall be filled by a Trustee appointed by the disinterested individual Trustees then acting hereunder, or, in the event there is no such Trustee then acting hereunder, appointed by the majority of the income beneficiaries of the Residuary Trusts hereunder who are sui juris. Any such appointment shall be in writing and shall become effective when accepted by the successor Trustee. The writing shall be filed with the Court having jurisdiction of the administration of the trusts under this Deed of Trust.

15.7  At any time after my death, the disinterested individual Trustees then acting hereunder may appoint a corporate Trustee, authorized to act as such in the Commonwealth of Pennsylvania, by a writing accepted by such corporate Trustee, and such appointment shall become effective when filed with the Court having jurisdiction of the administration of the trusts under this Deed of Trust. Any such corporate Trustee appointed as provided in this Article FIFTEENTH may be removed at any time by the then acting disinterested individual Trustees by an instrument in writing delivered to the corporate Trustee and a like instrument filed with the Court having jurisdiction of the administration of the trusts under this Deed of Trust, and, upon such removal, or at any time thereafter, the then acting disinterested individual Trustees may, but need not, appoint another corporate Trustee in the same manner as hereinabove provided. This power of removal and appointment of a corporate Trustee shall not be exhausted by one exercise hereof but may be exercised from time to time.

Case ID: 110603223

15.8    In the event of a disagreement among the individual Trustees and the corporate Trustee on any matter concerning this Deed of Trust or the exercise of any discretion vested under this Deed of Trust in Trustees, the decision of the individual Trustees shall prevail and be binding upon the corporate Trustee without any liability on the part of the corporate Trustee for any such decision by the individual Trustees.

15.9    Wherever, in this Deed of Trust, I have used the term "Trustees," such term shall mean the Trustees who, at the time, are entitled and qualified to act as such, whether originally appointed, substituted or succeeding, and none of such Trustees shall be required to give security in any jurisdiction in which such Trustee may act,

15.10   Corporate Trustee, if any, shall receive compensation for its services hereunder in accordance with its Standard Schedule of Charges in effect from time to time during the period over which such services are performed.

15.11   The individual Trustees shall be entitled to receive reasonable compensation for their services hereunder.

## SIXTEENTH
### Situs of Trusts and Governing Law

The situs of any trust under this Deed of Trust shall be the Commonwealth of Pennsylvania; provided, however, that Trustees, in their absolute discretion, may apply for Court approval to change such situs of any one or more trusts hereunder, and, upon such approval, may change such situs. All questions pertaining to the administration of the trusts or the construction or validity of this Deed of Trust shall be governed by the laws of the Commonwealth of Pennsylvania.

## SEVENTEENTH
### Construction

17.1    Any heading appearing after an Article number is used herein for convenience of reference only and is not to be considered in the legal construction of such Article.

17.2    Any reference herein to the Internal Revenue Code and any subtitles, Chapters and Sections thereof shall be to the Internal Revenue Code of 1954, as amended, or any corresponding applicable provision of any future Federal

-28-

Internal Revenue law as may hereafter be in effect.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 20th day of October, One Thousand Nine Hundred and Eighty-three (1983).

COPY

WITNESSES:

/s/ Daniel J. Pfister

/s/ Jeannette D. Pflaumer        (SEAL)
Jeannette D. Pflaumer
a/k/a Jeannette Pflaumer

-29-

Case ID: 110603223

PAGE 11/11

STATE OF PENNSYLVANIA                    :
                                         : ss.
COUNTY OF DELAWARE                       :

On the 20th   day of October    , 1983, before me, the sub-
scriber, a Notary Public, personally appeared JEANNETTE D.
PFLAUMER, known to me or satisfactorily proven to me to be the
person who executed the foregoing Deed of Trust, and in due
form of law she acknowledged the said Deed of Trust to be her
act and deed and desired it to be recorded as such.

WITNESS my hand and notarial seal the day and year aforesaid.

                              /s/Ronald D. Torratti
                                  Notary Public


The foregoing Deed of Trust is hereby accepted.


                              /s/William Elliott
                              William Elliott


                              /s/Mark K. Kessler
                              Mark K. Kessler


                              /s/Harvey W. Grossman
                              Harvey W. Grossman


                              /s/Philip M. Shiekman
                              Philip M. Shiekman


                              /s/Robert L. Pflaumer
                              Robert L. Pflaumer


-30-



# EXHIBIT B

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN
TWENTY-SECOND FLOOR, PHILADELPHIA SAVING FUND BUILDING
PHILADELPHIA, PENNSYLVANIA 19107

### INDENTURE OF TRUST

THIS INDENTURE OF TRUST, made this 15th day of April, 1976, between WILLIAM H. PFLAUMER, 511 Fairfax Road, Drexel Hill, Pennsylvania, of the first part, hereinafter referred to as the "GRANTOR", and BENNETT L. AARON, 12 South 12th Street, Philadelphia, Pennsylvania, of the second part, hereinafter referred to as the "TRUSTEES".

### W I T N E S S E T H :

I.    That the GRANTOR hereby transfers to the TRUSTEES, all monies, investments, securities and property (the receipt whereof is hereby acknowledged) described in a certain Schedule hereunto attached, marked Schedule "A", and to be deemed a part of this Indenture, which said monies, investments, securities, real estate and property of every kind and nature, which may at any time under the terms of this Indenture, constitute part of the trust hereby created, and such as may hereafter be added by the GRANTOR, in trust nevertheless, for the uses and purposes and with the powers hereinafter set forth.

II.    The TRUSTEES shall hold, invest and reinvest the principal of the trust estate, collect the income therefrom, pay all taxes and other charges that may be made properly against the trust estate, and distribute the principal and income thereof as follows:

A.    During the lifetime of the GRANTOR, the TRUSTEES shall distribute the income and principal of the trust estate as follows:

(1)    The GRANTOR'S children, WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER, BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES PFLAUMER, shall each have the right to withdraw prior to December 31, 1976, from the principal of the trust estate, the sum of Five Thousand ($5,000.00) Dollars, and the right to withdraw a similar sum in each succeeding year, such right to be non-cumulative; provided, however, that in no event shall the annual withdrawals of principal exceed the total principal

- 1 -

Case ID: 110603223

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

additions made by the GRANTOR to the trust estate in such
year. For the above purpose, RICHARD B. LADEN, shall have
the right to exercise this right of withdrawal as guardian
for a child of the GRANTOR who has not yet attained the age
of eighteen (18) years.

(2) In addition, the TRUSTEES, in their sole
discretion, may utilize so much of the income and principal
of the trust estate as may be necessary to provide for the
maintenance, education and support of the GRANTOR'S children,
WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,
BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES
PFLAUMER, and to provide them with educations up to and
including college and post-college level, providing their
other resources are inadequate for these purposes. Any
income not so annually utilized shall be accumulated and
added to the principal of the trust estate. Moreover, the
TRUSTEE, in his sole discretion, may make such additional
principal distributions to the GRANTOR'S children, WILLIAM
H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,
BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES
PFLAUMER, as he may deem necessary and appropriate to provide
for their best interests.

(3) Should all of the GRANTOR'S children,
WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,
BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES
PFLAUMER, predecease the GRANTOR, the undistributed principal
and accumulated income, if any, of the trust estate shall be
paid over to the estate of the last survivor of the GRANTOR'S
said children; provided that GRANTOR shall not be included
in the heirs or next of kin entitled to share in the estate
of such last survivor.

B. Upon the death of the GRANTOR, the undis-
tributed principal and accumulated income, if any, of this
trust estate, shall be divided into six (6), separate, equal
trusts, to be known as Trust "A", Trust "B", Trust "C",
Trust "D", Trust "E" and Trust "F", for the benefit of the
GRANTOR'S children, WILLIAM H. PFLAUMER, JR., ROBERT L.
PFLAUMER, RONALD PFLAUMER, BARBARA D. PFLAUMER, JEANNETTE
PFLAUMER and FRED CHARLES PFLAUMER, respectively. The
TRUSTEES shall pay over and distribute the income and
principal thereof as follows:

(1) Until each of the GRANTOR'S children,
WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,

- 2 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES PFLAUMER, attains the age of twenty-one (21) years, the TRUSTEES, in their sole discretion, may utilize so much of the income and principal of each child's respective trust estate as may be necessary to provide for his or her maintenance, education and support.  Any income not so annually utilized shall be accumulated and added to the principal of each child's respective trust estate.

        (2)  When each of the GRANTOR'S children, WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER, BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES PFLAUMER, attains the age of twenty-one (21) years, the TRUSTEES thereafter shall distribute to such child the net income of his or her trust estate, in annual or more frequent installments, and shall distribute the principal thereof to such child, at his or her request, as follows:

            One-half (1/2) thereof, absolutely when each attains the age of thirty (30) years; and

            The balance thereof, absolutely, when each attains the age of thirty-five (35) years.

        (3)  The TRUSTEES are authorized to accelerate the said distributions of principal, in whole or in part, to any of the GRANTOR'S children, WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER, BARBARA D. PFLAUMER, JEANNETTE PFLAUMER or FRED CHARLES PFLAUMER, after each has attained the age of twenty-one (21) years if, in their sole discretion, such payments shall promote the best interests of said child; provided, however, that no TRUSTEE shall participate in the exercise of this power who is a beneficiary hereunder in whose favor this provision can be invoked.

        (4)  Should any of the GRANTOR'S children, WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER, BARBARA D. PFLAUMER, JEANNETTE PFLAUMER or FRED CHARLES PFLAUMER, be deceased at the time he or she is entitled to receive distribution hereunder, or during the continuance of the respective trust created for him or her, such deceased child shall have the right, by his or her Last Will and Testament and by specific reference to this power, to dispose of the undistributed principal and accumulated

- 3 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

income, if any, of his or her trust estate, to his or her
spouse and issue, or any of them, in any manner and in such
proportions as he or she shall direct. In default, however,
of the valid exercise of this power of appointment by the
GRANTOR'S said child, the undistributed principal and ac-
cumulated income, if any, of the trust for such deceased
child shall be paid over to his or her issue, per stirpes,
if such issue have attained the age of twenty-one (21)
years; provided, however, that until such issue attain the
age of twenty-one (21) years, the TRUSTEES, in their sole
discretion, shall apply the income and principal of their
respective shares for their maintenance, education and
support, without the intervention of a guardian, and shall
distribute the balance of their respective shares to them
when each attains twenty-one (21) years of age.

(5)  Should any of the GRANTOR'S children,
WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,
BARBARA D. PFLAUMER, JEANNETTE PFLAUMER or FRED CHARLES
PFLAUMER, leaving no issue then surviving, be deceased at
the time he or she is entitled to receive distribution here-
under, or during the continuance of the respective trust
created for him or her, and to the extent that such deceased
child fails to exercise the power of appointment granted to
him or her in sub-paragraph "(4)" hereof, such child's
undistributed share shall accrue and be added equally to the
shares of the GRANTOR'S other children, who shall then
survive, or if deceased, to such deceased child's issue, per
stirpes, to be held and distributed by the TRUSTEES upon the
same terms and limitations and in the manner as hereinbefore
provided with respect to their original share.

(6)  Should all of the GRANTOR'S children,
WILLIAM H. PFLAUMER, JR., ROBERT L. PFLAUMER, RONALD PFLAUMER,
BARBARA D. PFLAUMER, JEANNETTE PFLAUMER and FRED CHARLES
PFLAUMER, leaving no issue then surviving, be deceased at
the time they are entitled to receive distribution here-
under, or during the continuance of the trusts created for
them, and to the extent that the powers of appointment
granted to them in sub-paragraph "(4)" hereof are not exer-
cised, the undistributed principal and accumulated income,
if any, of the trust estates shall be distributed to the
GRANTOR'S heirs or next of kin, absolutely, in accordance
with the provisions of the intestate laws of the Commonwealth
of Pennsylvania, then in force.

- 4 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

C. No TRUSTEE shall participate in the exercise of any discretionary power affecting distributions of income or principal of the trust estates to himself or herself, or his or her children, while they are minors, nor shall the income or principal of the trust estates be utilized to discharge the legal obligations of the parents of any minor children to support such children, so long as they are financially capable of doing so.

III. In the event that any beneficiary of any trust estate, by reason of illness, age, incapacity or any other cause shall, in the TRUSTEES' opinion, be unable properly to receive and disburse the income and principal to which he or she may be entitled, the TRUSTEES, in their sole discretion, shall pay and apply the income and principal due such beneficiary to his or her comfortable maintenance and support, without the intervention of any guardian, and without being required to apply to any Court for leave to make such payments; provided, however, that no TRUSTEE shall participate in the exercise of this power, who is a beneficiary hereunder in whose favor this provision can be invoked.

IV. The payment of income and principal to any beneficiary provided for herein shall only be made to such beneficiary and no disposition, charge or encumbrance of the right to such principal or income by any beneficiary hereof, whether such principal or income be in the possession of the TRUSTEES for payment, or by way of anticipation, shall be of any validity or legal effect and shall be disregarded by the TRUSTEES, and no right to such principal or income, or any part thereof, shall in any way be liable to any claim of any creditor of any such beneficiary. In the event of the bankruptcy or insolvency of any beneficiary, or in the event of any attachment or the establishment of enforceable lien or claim by legal process, operation of law or otherwise by any debtor, assignee, spouse or other persons as a result of which, if payment were made by the TRUSTEES hereunder, it would, in their opinion, have to be paid to, or upon payment, might become subject to the claim of a person other than said beneficiary, the interest of said beneficiary shall thereupon cease and terminate, and the TRUSTEES, in their sole discretion, may thereafter dispense all or any part of such principal or income as they may deem advisable for the welfare, comfort, support and education of such beneficiary, or may pay the whole or part of such income or principal to

- 5 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

one or more members of such beneficiary's family.  Notwith-
standing the above directions, nothing herein shall be
deemed to make the TRUSTEES liable for any payments of
principal or income which they may in their discretion make
to a third person on the unrevoked order or direction of
said beneficiary.

   V.   This Trust shall be irrevocable and not subject to
any amendment or alteration.

   VI.   The GRANTOR reserves the following rights:

      A.   To add to the principal of this trust at any
time by depositing additional property, upon the same terms
and conditions as though originally deposited.

      B.   To designate, during his lifetime, a sub-
stituted TRUSTEE or TRUSTEES, other than himself, in the
event of a vacancy in the office of TRUSTEE due to the
death, resignation or inability to serve of a TRUSTEE prior
to the termination of the trust estate created hereunder.

   VII.   During the continuance of this trust and at the
end thereof, for the purpose of making final distribution,
the TRUSTEES and their successors and assigns shall have and
possess the following powers, without liability for depre-
ciation in value or loss:

      A.   To sell and convey all or any part of any real
estate which may at any time become part of the subject
matter of this trust, at public or private sale, at such
time or times, for such price or prices and upon such terms
as to cash and credit as they may deem proper, free and
clear of all trusts and limitations and without liability on
the part of the purchaser or purchasers to see to the applica-
tion of the purchase money, and to satisfy of record any
mortgage belonging to the trust estate.

      B.   To retain, to hold unregistered, to sell, to
invest in, to resell and to reinvest all or any part of the
trust estate which may come into their hands in such a
manner and in such securities or other property, personal or
real, and upon such terms and for such length of time as the
TRUSTEES shall deem for the best interests of the trust
estates; it being intended hereby to give the TRUSTEES full

- 6 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

and complete authority to hold, possess, manage, control, sell, convey, encumber, lease for any term, even if in excess of the term authorized by Statute and extending beyond the terms of the trusts, invest and reinvest the whole and every part of the trust estate, without being confined to what are known as "legal investments for fiduciaries" under the Laws of the Commonwealth of Pennsylvania, then in force, and with the exception that no portion of the fund shall be invested in mortgage participating certificates, bonds, secured principally by real estate or what are commonly known as real estate bonds or pool mortgages.

C. To purchase or sell any and all investments at a premium or discount, and to exercise any option to subscribe for stocks, bonds or other investments; to grant options and proxies; to enter into voting trust agreements affecting any estate investments and to execute and issue letters of investment.

D. To determine whether money or property coming into their possession shall be treated as principal or income, and to charge or apportion expenses and losses to principal or income as they may deem just and equitable, and to bind beneficiaries and distributees by their judgment therein, in accordance with applicable Law, and the determination of the TRUSTEES, in this respect, shall be binding upon all beneficiaries.

E. To make distribution of the assets of the trust, in kind, according to their absolute discretion, and at such valuations as they may properly establish therefor.

F. To borrow such sums of money as may be required for the purpose of the trust estates, and to secure the loan by a pledge of all or any part of the trust property, or mortgage, and to execute an accompanying bond authorizing the confession of judgment and plain or collateral notes, or other evidences of indebtedness. Persons or corporations advancing money to the TRUSTEES need not inquire into the necessity, expediency or propriety of such a loan, nor see to the application of the money advanced.

G. To have full power and authority to purchase life insurance and annuity contracts for the benefit of the trust estates, and to pay out of income or principal the

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

premiums which may become due from time to time upon any life insurance and annuity contracts owned by the trust estates herein created; provided, however, that in no event shall the income or principal of the trust estate be utilized to pay premiums on any policies of insurance on the life of the GRANTOR.

H.   For greater convenience, the assets of the trusts herein created may be commingled by the TRUSTEES in one or more funds and with the assets of any similar trusts created by the GRANTOR, during his lifetime, or in his Last Will and Testament.

I.   At any time prior to December 31, 1976, the TRUSTEE is authorized to enter into an agreement to sell the Six Hundred Twenty Five (625) shares of common stock of WILLIAM H. PFLAUMER & SONS, INC., initially transferred to the trust created hereunder, at a price of Five Hundred Thousand ($500,000) Dollars, with payment to be made in equal annual installments over a term of ten (10) years, the unpaid balance of the purchase price to bear interest at the rate of six (6%) percent per annum.  The TRUSTEES shall not be liable for any loss sustained by the trust estate as a result of entering into said transaction and the GRANTOR hereby exonerates the TRUSTEE from any claims that may be asserted against him by the beneficiaries of the trust estate as a result of his entering into such transaction.

VIII.   The TRUSTEES shall have a first lien upon the trust estates for any tax, charge, claim or payment which they, as TRUSTEES, may be required to liquidate and discharge.

IX.   Except as otherwise provided in paragraph "VI B" hereof, should a vacancy occur in the office of TRUSTEE, FRANCIS J. RAINER, shall fill such vacancy.  Except as otherwise provided in paragraph "VI B" hereof, should a further vacancy occur in the office of TRUSTEE due to the death, resignation or inability to serve of FRANCIS J. RAINER, FRANK A. PANTANO, shall fill such vacancy.  Should a further vacancy occur in the office of TRUSTEE, and the GRANTOR fails to exercise the right reserved to him in paragraph "VI B" hereof, MARK K. KESSLER, shall fill such vacancy; provided, however, that if MARK K. KESSLER is unable to serve in the capacity of TRUSTEE, he shall be replaced by a member of the law firm of COHEN, SHAPIRO,

Case ID: 110603223

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

POLISHER, SHIEKMAN AND COHEN, designated by the senior members of said law firm; provided, however, that if the person so designated to succeed MARK K. KESSLER or his successor is unable to serve, he shall be replaced by a member of said law firm similarly designated.

X.    All accountings made by the TRUSTEES hereunder shall be made in the Commonwealth of Pennsylvania, in any Court of competent jurisdiction in that State, chosen by the TRUSTEES, and all the questions pertaining to the validity, construction and administration of the trusts hereby created shall be determined under the Laws of the Commonwealth of Pennsylvania.

XI.    The word "TRUSTEES" as used herein shall include the singular and the plural and the masculine and feminine genders.

XII.    BENNETT L. AARON acknowledges receipt of the property listed in Schedule "A", and agrees to perform his duties as TRUSTEE in accordance with the foregoing conditions and limitations.

IN WITNESS WHEREOF, WILLIAM H. PFLAUMER, the GRANTOR, and BENNETT L. AARON, the TRUSTEE, have hereunto set their hands and seals the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

_____          _____ (SEAL)
                                 WILLIAM H. PFLAUMER
                                           GRANTOR

                                 _____ (SEAL)
                                 BENNETT L. AARON
                                           TRUSTEE

Case ID: 110603223

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

COMMONWEALTH OF PENNSYLVANIA   :
                                                            :SS
COUNTY OF PHILADELPHIA          :

     BEFORE ME, this 15th day of April, 1976, the subscriber, a Notary Public in and for the Commonwealth of Pennsylvania, residing in the City and County of Philadelphia, personally appeared the within named, WILLIAM H. PFLAUMER, the GRANTOR in the foregoing Indenture of Trust, and acknowledged the same to be his act and deed and desired the same might be recorded as such.

     WITNESS my hand and Notarial Seal the day and year aforesaid.

Sworn to and subscribed before me
this ..... day of April 19 76

_John Ranalli_
NOTARY PUBLIC

JOHN RANALLI
Notary Public, Philadelphia, Philadelphia Co.
My Commission Expires October 1, 1977

- 10 -

LAW OFFICES
COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN

SCHEDULE "A"

625 shares of common stock of WILLIAM H. PFLAUMER & SONS,
INC.

_____ (SEAL)
WILLIAM H. PFLAUMER
GRANTOR

_____ (SEAL)
BENNETT L. AARON
TRUSTEE

- 11 -

## FIRST AMENDMENT
## TO
## INDENTURE OF TRUST

THIS FIRST AMENDMENT TO INDENTURE OF TRUST is made this 19th day of December , 1981 by WILLIAM H. PFLAUMER ("GRANTOR").

### BACKGROUND

A.    A certain Indenture of Trust was made April 15, 1976 between GRANTOR, as the Grantor, and BENNETT L. AARON, as the initial Trustee (the "Indenture of Trust").

B.    Pursuant to the provisions of Paragraph VI of the Indenture of Trust, Grantor retained certain rights with respect to his authority to designate a successor Trustee or Trustees in the event that there is a vacancy in the office of Trustee.

C.    Bennett L. Aaron  has ceased to be a Trustee under the Indenture of Trust and pursuant to the provisions of Paragraph VI thereof, the current Trustees thereunder are Philip Shiekman and Mark K. Kessler.

D.    GRANTOR now desires to amend the Indenture of Trust so that the right to remove and appoint additional co-Trustees is granted to his children upon certain terms and conditions and in order to provide that in the event of any difference among the Trustees, the act of the majority of them shall control.

E.    In Paragraph IX of the Indenture of Trust, GRANTOR made certain provisions as to who shall be a Trustee thereunder. GRANTOR now desires to also amend those provisions.

-2-

## TERMS

1.   The Indenture of Trust is amended to delete
Paragraph B of Paragraph VI in its entirety and add in its place
a new Paragraph VI A which shall read in its entirety as follows:

"VI A.   During the lifetime of the GRANTOR,
the GRANTOR grants the rights set forth in
subparagraphs A and B, below, to his son ROBERT L.
PFLAUMER and his daughter JEANNETTE D.
PFLAUMER, JR., to be exercised jointly
by the two of them (or the survivor of them).
Subsequent to the death of the GRANTOR, the
GRANTOR grants the right set forth in sub-
paragraphs A and B, below, to: (i) ROBERT L. PFLAUMER
and JEANNETTE D. PFLAUMER, JR. (or the survivor
of them) who shall collectively have one (1)
vote with respect thereto and (ii) WILLIAM H.
PFLAUMER, JR., RONALD PFLAUMER, BARBARA D.
PFLAUMER and FRED PFLAUMER (or the survivor
of them), who shall also collectively have
one (1) vote with respect thereto and said
right shall be exercisable upon the unanimous
action and agreements of both groups.

A.  To remove any TRUSTEE serving hereunder,
with or without cause, at any time.

B.  To designate, at any time and whether or
not there is then a vacancy in the office
of the TRUSTEE, a co-TRUSTEE or co-TRUSTEES
to serve together with any current TRUSTEE
or TRUSTEES; provided, however, that in no
event may this right be exercised if there
are three TRUSTEES then serving."

2.   The provisions of Paragraph IX of the Indenture
of Trust are hereby revoked in their entirety and a new Paragraph
IX is added to the Indenture of Trust to read in its entirety
as follows:

"IX.   Subsequent to the death of Grantor, in
the event that MARK K. KESSLER ceases
to serve as a TRUSTEE, the senior members
of the law firm of BRABNER AND KESSLER
shall have the right at all times to
appoint a member of that firm to serve
as a successor TRUSTEE to him.   In the
event that HARVEY W. GROSSMAN ceases to

-3-

> as a TRUSTEE, the senior members
> of the accounting firm of
> GROSSMAN & CO. shall have the right
> at all times to appoint a member
> of that firm to serve as a successor
> TRUSTEE to him."

3.  The Indenture of Trust is amended to add a new Paragraph IX A to read in its entirety as follows:

> "IX A.  In the event of disagreement
> among the TRUSTEES or failure to act
> on the part of any TRUSTEE, the act
> of majority of the TRUSTEES entitled
> to act in any specific instance shall
> control, and the same shall be binding
> upon any trust created hereunder when
> evidenced in writing signed by such
> majority, without the joinder of or
> liability on the part of the dissenting
> or non-acting TRUSTEE."

4.  Except as amended hereby, the Indenture of Trust is hereby ratified and confirmed.

IN WITNESS WHEREOF, William H. Pflaumer, the GRANTOR, has hereunto set his hand and seal the day and year first written above.

Witness:

_Robert L. Welty_

_William H. Pflaumer_, Grantor

COMMONWEALTH OF PENNSYLVANIA  :
                                         : SS
COUNTY OF PHILADELPHIA        :

        BEFORE ME, this 29th day of December, 1981 the subscriber, a Notary Public in and for the Commonwealth of Pennsylvania, residing in the City and County of Philadelphia, personally appeared the within named, WILLIAM H. PFLAUMER, the GRANTOR in the foregoing First Amendment to Indenture of Trust, and acknowledged the same to be his act and deed and desired the same might be recorded as such.

        WITNESS my hand and Notarial Seal the day and year aforesaid.

_Ida W. Peters_
NOTARY PUBLIC

IDA W. PETERS
Notary Public, Phila., Phila. Co.
My Commission Expires Aug. 18, 1984

# EXHIBIT C

Case ID: 110603223

Check 0000106820

**Check Image**

| Bus. Date | Blk Num | Seq. Num | Check | Acct. Num | Tran Code | Amount | FRB ABA |
|---|---|---|---|---|---|---|---|
| 07/10/2007 | 254 | 190100046-0 | 0000106820 | 3299912289 | 0 | 100000.00 | USD 061112788 |





Case 110603223

# EXHIBIT D

Case ID: 110603223

Check 0000106821

Check Image

| Bus. Date | Blk Num | Seq. Num | Check | Acct. Num | Tran Code | Amount | PRU-ABA |
|---|---|---|---|---|---|---|---|
| 07/10/2007 | 284 | 190100049-0 | 0000106821 | 3299912269 | 0 150000.00 - USD | 091112788 |





Case ID: 110603223



CERTIFIED MAIL

7010 0780 0002 1500 0432

U.S. POSTAGE
PHILADELPHIA, PA
JUL 31 11
AMOUNT
$8.23
0002591007

RETURN RECEIPT
REQUESTED

**First Class Mail**

**Offit | Kurman**
Attorneys At Law

Philadelphia
Ten Penn Center
1801 Market Street
Suite 2300
Philadelphia, PA 19103

Lincoln National Life Insurance Company
c/o Prentice-Hall Corporation System, Inc.
Suite 500, 251 East Ohio Street
Indianapolis, IN   46204



**CORPORATION SERVICE COMPANY**°

# Notice of Service of Process

CZG / ALL
Transmittal Number: 8890013
Date Processed: 07/07/2011

| | |
|---|---|
| **Primary Contact:** | Kelley A Grady<br>Lincoln Financial Group<br>150 N Radnor Chester Rd<br>Radnor, PA 19087 |
| **Copy of transmittal only provided to:** | Ms. Debbie Bauermeister<br>Lori Yonkman<br>Ms. Shawn Gross |

| | |
|---|---|
| **Entity:** | The Lincoln National Life Insurance Company<br>Entity ID Number 0186956 |
| **Entity Served:** | Lincoln National Life Insurance Company |
| **Title of Action:** | Jeannette D. Pflaumer Trust vs. Lincoln National Life Insurance Company |
| **Document(s) Type:** | Notice and Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Philadelphia County Court of Common Pleas, Pennsylvania |
| **Case/Reference No:** | 003223 June 2011 |
| **Jurisdiction Served:** | Indiana |
| **Date Served on CSC:** | 07/06/2011 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Craig F. Turet<br>267-338-1307 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com